<pre>
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION


 3
        UNITED STATES OF AMERICA,        Case No. 1:10cr387
 4                                       Cleveland, Ohio
                   Plaintiff,            October 5, 2011
 5
                      vs.
 6
        JAMES C. DIMORA and
 7      MICHAEL D. GABOR,


 8
                     Defendants.
 9


10                     TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HONORABLE SARA LIOI
11                    UNITED STATES DISTRICT JUDGE


12
                           MOTION HEARING
13


14      APPEARANCES:


15      For the Government:        Antoinette T. Bacon
                                   Ann Rowland
16                                 Nancy Kelley
                                   Assistant United States
17                                 Attorneys
                                   Suite 400
18                                 801 Superior Avenue, West
                                   Cleveland, Ohio  44113
19                                 216/622-3966


20
        For Defendant Dimora:      William T. Whitaker, Jr., Esq.
21                                 Andrea L. Whitaker.
                                   Law Office of William T. Whitaker
22                                 301 Gothic Building
                                   54 East Mill Street
23                                 Akron, Ohio  44308
                                   (330) 762-0287
24


25
</pre>

```
 1   For Defendant Gabor:        Leif B. Christman
                                 David Oakley
 2                               2000 Standard Building
                                 1370 Ontario Street
 3                               Cleveland, Ohio  44113
                                 (216) 241-5019
 4

 5

 6

 7   Court Reporter:             Lori Ann Callahan, RMR-CRR
                                 United States District Courthouse
 8                               Room 568
                                 2 South Main Street
 9                               Akron, Ohio  44308
                                 (330) 819-8676
10

11

12

     Proceedings recorded by mechanical stenography, transcript
13   produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (BEGINNING OF EXCERPT)

2

3             THE COURT:  Very well.  Thank you.  All right.

4    Let's see.  Now I think we are to the minimization, which is

17:03:22  5    Mr. Dimora's motion number 44.  The government responded.

6    You're indicating you have a reply?

7             MS. WHITAKER:  Yes, Your Honor.

8             THE COURT:  And I believe there's an

9    indication that these are just examples of the phone calls

17:03:46 10    that you believe were not properly minimized in the

11    briefing.  Am I recollecting that?

12             MS. WHITAKER:  I believe we included examples.

13    We also included a rate that we believe that showed that

14    they were not properly minimized, as well.

17:04:08 15             THE COURT:  All right.  So what I am -- I

16    guess the point -- this is very important.  You're

17    indicating that you have now presented the court with all

18    the calls that you believe were not properly minimized?

19             MS. WHITAKER:  No, Your Honor.  There will be

17:04:20 20    more information contained in the reply.

21             THE COURT:  Well, that's exactly what my

22    concern is.

23             MS. WHITAKER:  Okay.

24             THE COURT:  That's a reply.  And I am

17:04:29 25    wondering why that's coming out in the reply.

1          MS. WHITAKER:  Because the -- we included

2     examples, Your Honor, as well as what we believed were the

3     percentage of the numbers of non-minimized calls.  And in

4     their opposition, the government has indicated that's not

17:04:42  5     enough.  So we will be providing additional information in

6     the reply.

7          We're replying to the arguments that were in

8     the opposition, Your Honor.

9          THE COURT:  I guess that's what concerns me is

17:04:58 10     the motion deadline.  But what I am going to do is I'm going

11     to let you reply in the way you want to, and it better be --

12     what I am suggesting to you is it ought to be complete,

13     because the court can then go through this information to

14     determine if there was proper minimization or not and what

17:05:20 15     the percentages are.

16          You're disputing even the percentages?

17          MS. WHITAKER:  Yes.

18          THE COURT:  And on what basis are you even

19     disputing the percentage?

17:05:28 20          MS. WHITAKER:  Our review of the calls.

21          THE COURT:  Then you better make your

22     calculation longhand, so that I can understand why you think

23     their percentage is wrong.  Because I don't want just some

24     summary, because there's one thing that does give us some

17:05:50 25     certainty in life normally and that's mathematical equations

1    for the most part, and you have a limited number -- limited

2    universe of calls.  You have a number that you don't believe

3    were properly minimized.  We ought to be able to come up

4    with the same sort of numbers.

17:06:10  5            Now, the government may say, no, we don't

6    think there were -- we think they were properly minimized,

7    and here's what we think the numbers are.  But I don't know

8    why we can't be doing the same sort of math.  Do you

9    understand?  I don't know why we can't come to an agreement

17:06:27  10    on some of the basic math involved.

11            MS. WHITAKER:  I understand what you're

12    saying.  I mean, I would also be able to --

13            THE COURT:  I am saying this to both parties.

14            MS. WHITAKER:  Okay.  I will provide the court

17:06:38  15    what I have, but I would also request that we see where the

16    government came up with their numbers, as well.

17            THE COURT:  Of course.  So you go ahead and do

18    your reply, and since you're going to put all this new

19    information in that frankly probably should have been in in

17:06:50  20    your initial briefing, I will permit you to do it.

21            And then the government is going to have a

22    chance to respond and then include that other issue

23    regarding the pen registers.

24            MS. WHITAKER:  That's fine, Your Honor.  Thank

17:07:07  25    you.

1                        THE COURT:  And then, I think, the court ought

2       to be able to make a decision based upon the briefing; yes?

3                        MS. WHITAKER:  Yes, Your Honor.

4                        THE COURT:  With no need for an additional

17:07:16  5       hearing on that?

6                        MS. WHITAKER:  Sitting here right now, I would

7       agree with the court.  There's nothing that's jumping to my

8       mind at this moment.

9                        THE COURT:  That's frankly how I've done it

17:07:26 10       before.

11                        Now, here's the big issue for the court.

12       You're going to make these references to these phone calls.

13       In previous cases, I've had some transcripts.  What is the

14       status?  Tell me what is available to the court relative to

17:07:44 15       reviewing these calls?

16                        MS. WHITAKER:  I can tell you what we've been

17       given, Your Honor.  We have not yet prepared any

18       transcripts, as the court, I'm sure, understands, we are

19       still going through what was initially provided by the

17:07:54 20       government.

21                        We've gotten some transcripts from the

22       government, but I can also tell the court I could not even

23       tell you.  We've just been handed some new ones today.  So I

24       have no what idea what's available in terms of transcripts.

17:08:05 25       I can certainly provide the court --

1          THE COURT:  I'm not directing it to you.  I'm

2    directing to the government, as well.

3          MS. BACON:  Yes, Your Honor.

4          THE COURT:  I know you are the one standing.

17:08:13  5          MS. BACON:  I might be able to help the court.

6    We have provided in discovery, actually as part of trial

7    prep, approximately 280 transcript of calls the government

8    intends to introduce in its case in chief.

9          We produced those to the defense so they could

17:08:26  10   review those transcripts well in advance of trial so we

11   would have some stipulations as to the calls, which is the

12   procedure we followed in other trials.

13         But with respect to -- I believe those are the

14   transcripts to which Ms. Whitaker was referring.  With

17:08:39  15   respect to the McCafferty motion to suppress, the

16   transcripts that were provided to the court were actually

17   defense-produced transcripts.  They produced all of their

18   transcripts and provided those as motions attachments.

19   Those were not our transcripts.

17:08:52  20         And so to the extent it's our belief it's the

21   defendant's burden of proof and to the extent they believe a

22   transcript would aid in the court's decision-making, they

23   should provide it.

24         But, Your Honor, the Government can't help but

17:09:02  25   to object to allowing the reply to contain new calls, and

1    what's distressing to the government seems to be a pattern

2    of the defendants treating the court's deadline as

3    suggestions and moving targets.  And the practical

4    implication is that when they file this reply, we have to go

17:09:20   5    through then and perhaps file a response because what we

6    have seen is that the defendants characterize calls and make

7    factual assertions that are not correct in some cases;

8    claiming some calls were not minimized, when, in fact, they

9    were; claiming that some calls were two parties when they

17:09:37  10    were between somebody else.

11              And so it's going to compel us to go through

12    this list of the new calls call by call.

13              THE COURT:  I'm going to get to that.  How

14    many new -- excuse me for interrupting.

17:09:46  15              How many new calls do you think you're

16    compiling?  I am just curious since today is Wednesday, and

17    you're response is due Friday.

18              MS. WHITAKER:  Friday.  First of all, they are

19    not new calls, Your Honor.  They're calls -- we provided the

17:09:57  20    court with what we believe is the mathematical equation for

21    the minimization rate.  The government, in their opposition,

22    said we have not given enough examples of that, so that is

23    that we have not demonstrated that these calls are --

24              THE COURT:  Okay.  There is a big disconnect

17:10:12  25    with what you're saying here to me, because you're saying

1    you provided all the calls and you provided all the

2    mathematical -- what you're saying to me, I have to confess,

3    is not -- doesn't make sense; okay?

4             Have you provided all the calls?

17:10:34  5             MS. WHITAKER:  No.  I didn't mean --

6             THE COURT:  How many additional calls?

7             MS. WHITAKER:  I don't know sitting here right

8    now.  I don't have it with me.

9             THE COURT:  You have a rough estimate, because

17:10:41 10    you filed your motion, so I was hoping that you would think

11    it would be important to marshal all those when you filed

12    the motion.

13             MS. WHITAKER:  In my motion, I identified what

14    we believe are the percentage of calls which then equates to

17:10:56 15    a number of calls that should have been minimized.

16             THE COURT:  How did you come up with that

17    equation?

18             MS. WHITAKER:  By listening to the calls, Your

19    Honor, and reviewing --

17:11:04 20             THE COURT:  How did you formulate your -- what

21    was your equation?

22             MS. WHITAKER:  Reviewing some information we

23    had received from the government, as well.  That's how we

24    came up with that.

17:11:19 25             THE COURT:  How many calls did you identify?

```
          1              MS. WHITAKER:  I apologize.  I don't have

          2     anything about the minimization in front of me.  I didn't

          3     think we would address it today since it's not fully

          4     briefed, so I didn't think it would be part of the --

17:11:32  5              THE COURT:  I have the brief in front of me.

          6     I am trying to get a handle on this, because the time for

          7     marshalling was when you filed the motions.

          8              MS. WHITAKER:  I thought we did that, Your

          9     Honor.

17:12:04 10              THE COURT:  Hundreds, if not, thousands.  This

         11     is what concerns me.  Hundreds, if not, thousands of calls

         12     you didn't marshal for the first -- your additional motion?

         13              MS. WHITAKER:  I beg your pardon?

         14              THE COURT:  In your motion to suppress, on

17:12:32 15     page -- this is document 484.  This is very disconcerting to

         16     the court to read this.  You say that the evidentiary

         17     hearing we agreed we're not going to have to have, "Mr.

         18     Dimora," this is page 14, "Mr. Dimora will present

         19     additional evidence confirming the full and specific extent

17:12:53 20     of this failure," and this is the failure to minimize.

         21              "As this will involve hundreds, if not,

         22     thousands of specific calls, Mr. Dimora will look to the

         23     court for guidance on whether or -- when the enormous volume

         24     of specific examples of improper interceptions becomes

17:13:09 25     unnecessary for evidentiary purposes repetitive."
```

1          So are you telling me that there are hundreds,

2     if not, thousands of calls that you have yet to identify?

3          MS. WHITAKER:  I'm telling the court that

4     first, I thought that when we gave what we believed were the

17:13:25  5     rates of calls that -- minimization rates that we provided,

6     and I believe that I genuinely did believe I was providing

7     information to the court then and indicating we would

8     provide specific examples at an evidentiary hearing.

9          The government in opposition said that you

17:13:41 10     have not provided enough.  We're going to provide more.  If

11     the court, and I think that's fine, does not want to have an

12     evidentiary hearing, we will try to provide as many as we

13     can.

14          THE COURT:  I thought we decided for this

17:13:54 15     particular issue we don't need an evidentiary hearing

16     because you're going to present the calls; you're going to

17     do your equation.  The government is going to get a final

18     response.  But I'm just concerned that this is somehow going

19     to be lopsided and there's just this hundreds of thousands

17:14:16 20     of calls that should have been identified in the first

21     motion that will be identified in the reply.

22          And so I am asking you, since you have two

23     days left, what do you think -- what further calls you think

24     you might be identifying, the number?

17:14:35 25          MS. WHITAKER:  What I plan to do and begun to

1    do in the reply, Your Honor, is detail -- what I was

2    preparing before I thought there was still a potential for

3    an evidentiary hearing, what I planned to do was detail some

4    more examples of calls that shouldn't have been minimized

17:14:53 5    that were, and then list maybe session numbers, but then

6    present that to the court at the evidentiary hearing.

7              I can do that by disk when I give my reply,

8    and then there won't be a need for an evidentiary hearing.

9              THE COURT:  Okay.  But you have no idea as you

17:15:11 10   stand here today the number of calls --

11             MS. WHITAKER:  I don't.

12             THE COURT:  -- you plan to identify?

13             MS. WHITAKER:  I don't.  Again, I think --

14             THE COURT:  Is it two dozen, is it 50?

17:15:24 15            MS. WHITAKER:  I thought that by providing the

16   court with the percentages, then thereby providing a number

17   of calls that should have been minimized that weren't, and I

18   was giving specific examples.

19             The government indicated in opposition that

17:15:38 20   they did not believe that was enough.  That is why, and we

21   also put it in our motion, that at the evidentiary hearing

22   we would provide more details and, in fact, the calls.  I

23   can do that instead on a disk with my reply so that there is

24   no need for that.

17:15:55 25            THE COURT:  What about a transcript?

1          MS. WHITAKER:  I can tell the court that I do

2     not have transcripts.  First of all, the insinuation that I

3     disregard the court's deadlines and think that they're a

4     moving target, I've paid very close attention to the court's

17:16:09   5     deadlines.  We have worked very hard in an enormous amount

6     of material.

7          THE COURT:  So what about -- no transcripts?

8          MS. WHITAKER:  No.

9          THE COURT:  Do we have an idea how many calls

17:16:19  10     you're going to have the court review at all based upon your

11     motion?

12          MS. WHITAKER:  I don't have the number, no.  I

13     do not know off the top of my head the number.

14          THE COURT:  Okay.  On page 12 of your brief,

17:18:03  15     you do cite numbers and percentages.

16          MS. WHITAKER:  Yes, page 12 of my brief.

17          THE COURT:  Okay.  Which is what I was asking

18     for and you take the same -- and you come up with those

19     percentages, correct?

17:18:23  20          MS. WHITAKER:  Yes.

21          THE COURT:  Same thing on page 10?

22          MS. WHITAKER:  Yes.

23          THE COURT:  I guess what I am asking you for

24     is you have to know the numbers that went into that equation

17:18:36  25     to get that percentage.

1          MS. WHITAKER:  Well, as I look at page 13 and,

2    again, I just don't recall how many off the top of my head

3    what's in this pleading, but as I'm looking at page 13 --

4          THE COURT:  There are numbers there.

17:18:49  5          MS. WHITAKER:  There are numbers there.  We

6    identified 884 non-minimized calls over two minutes that

7    should have been minimized and over 70 percent of those, so

8    70 percent of the 884 are what should have been minimized

9    that were not.

17:19:12 10          I am sincerely trying my best to answer Your

11    Honor's questions.

12          THE COURT:  70 percent.  Where did that number

13    come from?

14          MS. WHITAKER:  That first sentence.  "Over 70

17:19:26 15    percent were not subject to interception and should have

16    been minimized because they should not have been subject to

17    full interceptions."  I am on the page that Your Honor

18    directed me to.

19          THE COURT:  I am on that page, too.

17:21:11 20          All right.  I am just trying to decide what to

21    do because I don't want this to be the normal practice.

22    This is the second time this has happened on minimization

23    and it's really frustrating.

24          But at least when this happened in a prior

17:21:31 25    case, counsel had some clue as to how many additional calls

1    they were going to identify, and you're saying you have no

2    idea.

3              MS. WHITAKER:  What I am saying is I hadn't

4    planned on detailing that many additional calls.  I was

17:21:45 5    going to give some more examples in the briefing of calls

6    that I believe should have been minimized, but was going to

7    present it at a hearing a disk, but we will do so with my

8    reply of these calls that I've identified.

9              THE COURT:  I see.  That makes it a little

17:22:01 10   clearer.

11             MS. WHITAKER:  I was not trying to jackpot or

12   provide later information in the reply.  It's these calls

13   that I'm referring to.  It's these calls that I will detail

14   some more extensively, but then provide to the court.

17:22:13 15             THE COURT:  So you will provide 884 calls to

16   the court on disk?

17             MS. WHITAKER:  Yes, Your Honor.

18             THE COURT:  Okay.  And you're suggesting that

19   none of these are going to be -- that that's what -- we keep

17:22:25 20   going around and around.  You're going to identify zero new

21   calls.  You just want to be more descriptive.

22             MS. WHITAKER:  No.  Again, I'm going to detail

23   some more calls the way that I have in my initial motion.

24   I'm going to go into --

17:22:41 25             THE COURT:  Of the 884.

1              MS. WHITAKER:  Of the 884.

2              THE COURT:  Right.

3              MS. WHITAKER:  Maybe that's the -- maybe

4     that's where the miscommunication came from.

17:22:48  5              THE COURT:  Absolutely.

6              MS. WHITAKER:  When you were saying new, it's

7     nothing outside of the numbers that are --

8              THE COURT:  Well, you answered my question.

9     So the answer is zero.

17:22:55 10              MS. WHITAKER:  Of new calls, yes.  I will be

11    more descriptive of some of the calls identified in this

12    motion.

13              THE COURT:  I get it now.  I kept saying, I

14    think, new calls or additional calls.

17:23:06 15              MS. WHITAKER:  And I thought the court was

16    referring to calls that I specifically had examples that I

17    referenced.

18              THE COURT:  Okay.  So zero calls above 884

19    will be discussed.  In other words, there aren't any new

17:23:21 20    ones.  You're going to be more detail about the 884 you

21    identified?

22              MS. WHITAKER:  Right.

23              THE COURT:  Got it.

24              MS. BACON:  This is what's causing the

17:23:28 25    government great concern.  Because it's the government's

1    understanding of the case law that they have a burden to

2    show a pattern.  One of the elements of showing a pattern is

3    based on statistics.  They did that.  That's one of the

4    Scott factors.

17:23:39  5                    THE COURT:  I know that.

6                    MS. BACON:  I know Your Honor is very familiar

7    with the Scott factors.  And what I hear now is after we

8    show that the specific calls that addressed other Scott

9    factors, when they found that that wasn't sufficient, now

17:23:51 10    they want another bite of the apple and let me give you

11    more.

12                    What the government is hearing is that we're

13    going to get a list of decisional calls that were not

14    specifically described in their motion, because they listed

17:24:04 15    certain call numbers, approximately 40.  I went through and

16    I listened to every single one of those calls, found out

17    some were minimized, some were improperly or inaccurately

18    described or not completely described; some of them had very

19    good reasons why that were not minimized that were not fully

17:24:18 20    addressed.

21                    And what the government is concerned is we're

22    going to get a list of 50, 60, 70, 80 session numbers, 800

23    session numbers, that now we have to go through to show some

24    of these actually were minimized.  Some of these actually

17:24:36 25    were about criminal conduct.

1            And instead of spending the next two weeks in

2       trial prep, which based on Your Honor's trial schedule, we

3       were working towards, because we have other motions

4       deadlines coming up.  We have other -- we're going to be --

17:24:50  5       I think, what this is is a deliberate attempt by the

6       defense, as with the issue with CS-5 we discussed at the

7       bench, they had eight months to provide the specific

8       information.  They had eight months to get evidence to

9       support their motions.  And then they wait until the motions

17:25:05  10      hearing and say, well, now we want more time to put together

11      more because it looks like we didn't meet our burden, and

12      that's not the way it's supposed to be.  It's supposed to be

13      they have --

14            THE COURT:  You said they did 40?

17:25:17  15            MS. BACON:  Approximately.

16            THE COURT:  I would suggest to you that in

17      your reply, you ought not to have more calls detailed than

18      you had in your motion, as far as the calls that you're

19      trying to establish the pattern.

17:25:37  20            Is that fair to say, that you ought to have

21      done the bulk of it when you filed your motion?

22            MS. WHITAKER:  We're certainly not going to

23      detail more than 40 calls.  We were --

24            THE COURT:  But now you want to provide -- so

17:25:50  25      if I get you, if I understand you, you were planning to come

1    to an evidentiary hearing and play 884 calls to the court?

2                    MS. WHITAKER:  We were going to provide 884

3    calls.  We were going to play several more to demonstrate

4    that there's as pattern here and provide the court with

17:26:07  5    calls that we believe should have been minimized.

6                    THE COURT:  And you're saying all 884 of those

7    calls should be minimized?

8                    MS. WHITAKER:  That is our interpretation of

9    the calls, yes.  And, again, what the government is saying,

17:26:21 10    first of all, obviously, I strenuously disagree with any

11    assertion that we're trying to delay or somehow we've not --

12    we've been waiting around to do nothing.  When we get

13    information, we provide it to the court.  We've worked very

14    hard to meet all of the court's deadlines and wade through

17:26:38 15    the information we have been given by the government.

16                    Second of all, as I read the standard, a

17    minimization to get to a hearing, which was to show a

18    definite non-conjectural basis upon which to make the claim

19    that minimization wasn't properly effectuated here.  I think

17:26:58 20    we've done that in our motion.

21                    THE COURT:  On what basis -- you're saying 70

22    percent of 884 calls weren't properly minimized?

23                    MS. WHITAKER:  Yes.  And we detailed some of

24    those cases as an example in our motion and had plans on

17:27:11 25    providing the rest of those calls at the evidentiary

1    hearing, which is what I believed was called for by the

2    standards.

3              That's why I said to the court we could

4    provide those calls on a disk and then not have a need for

17:27:23  5   the evidentiary hearing because that's what we believe that

6    more extensive showing was required.  We thought we met the

7    burden to have an evidentiary hearing by giving the court

8    the numbers of our review of the calls.

9              THE COURT:  Let me ask this.  Of these 884,

17:27:40  10  the ones that were prior -- previously identified the

11   court's response -- sorry, the government's response to the

12   40 examples, okay, as to how many -- as to calls with which

13   you're in disagreement?

14             MS. BACON:  As I remember the motion, it was

17:28:04  15  we didn't -- we didn't minimize X number of calls and we

16   should have and here are our examples.  These are the 40.

17   And I don't know if it's exactly the 40, but give or take,

18   40 calls that prove the pattern.  And so the government went

19   through the 40 calls that --

17:28:23  20             THE COURT:  Right.

21             MS. BACON:  -- allegedly prove the pattern.

22   Now I'm hearing that we have to go through all 800 and go

23   through every single one and disprove the pattern, and it's

24   the government's understanding of the case law is that they

17:28:34  25  have to go through and explain.

1          THE COURT:  That's exactly right.  If you

2     you're going to claim to this court that 884 calls were not

3     properly minimized, you better do that in your reply.  You

4     better be specific.  Because that is a big huge allegation

17:28:52 5     there.  You're making a claim.  You're making a

6     representation to this court that 884 calls were not

7     properly minimized, and if that's the case, I want to know

8     about it, or 70 percent of the 884 calls, I'm sorry.  Your

9     word now is 884, and you are saying 70 percent of those were

17:29:16 10    not properly minimized.  If you've done that homework

11    already, then you can share it.  You need to share it with

12    the court, because that is your job.

13          And then I will go through, if I need to, to

14    make that determination, but you need to be -- you can't

17:29:30 15    just say, here are 50 examples of 70 percent of 884 and then

16    you, Court, can make your own judgement as to why these

17    other calls weren't properly minimized.

18          I mean --

19          MS. WHITAKER:  I understand what the court is

17:29:56 20    asking.  Obviously, I had also thought there would be a

21    chance for an evidentiary hearing.  I will do my best to do

22    that for the court by Friday.

23          MS. BACON:  That's the government's objection

24    is now we're going to get another list of calls that we have

17:30:08 25    to go through.

1        THE COURT:  It's either -- I mean --

2        MS. BACON:  It should have been.  And, Your

3   Honor, respectfully, in our opinion, it should have been

4   their burden to list all of them the first time.  We respond

17:30:19  5   and the reply is supposed to be to our response, which is we

6   said that call 566, which was one of the cited calls, was

7   properly monitored and the reply to the government's point

8   of view should be, well, actually, no, 566 was not properly

9   monitored for these reasons.  It's not another chance to

17:30:38 10   give 500 more examples.

11        Your Honor, the practical reality is now we're

12   going to have to spend for the next two to three weeks, if

13   not longer, listening to all these calls.

14        THE COURT:  You have that -- do you have that

17:30:49 15   information even?  You're making a representation to the

16   court that 70 percent of these calls weren't properly

17   minimized.  That is your representation?

18        MS. WHITAKER:  That is my representation based

19   on my review of the calls, as well as of the information we

17:31:02 20   received from the government.  I would disagree with Ms.

21   Bacon about -- our burden at this point has to demonstrate a

22   definite non-conjectural showing that there's a pattern of

23   having calls that should have been minimized that weren't.

24   And I think that we've done that.

17:31:22 25        THE COURT:  If you think you've done it, then

1    just respond to the government.  Just respond to the

2    government's arguments like you're supposed to do in a

3    reply.

4              MS. WHITAKER:  I hear the court, and I will do

17:31:32  5    the best to do that in our Friday reply.

6              THE COURT:  If you think that you've done it,

7    which is your burden and which was your duty to do in your

8    motion, then just respond and tell me why the government is

9    wrong in their characterization of the calls.  I mean, you

17:31:52 10    said you think you've done it?

11              MS. WHITAKER:  Does the court want on Friday

12    what we had planned to produce at an evidentiary hearing?

13              THE COURT:  There was never any indication

14    there was going to be an evidentiary hearing.

17:32:06 15              MS. WHITAKER:  Absolutely.

16              THE COURT:  So your duty was to provide your

17    evidence and your motion and the court will make a

18    determination as to whether or not you needed an evidentiary

19    hearing.  That evidentiary hearing is not the time to

17:32:18 20    present new arguments.

21              MS. WHITAKER:  I understand what the court is

22    saying.

23              THE COURT:  If you think you've carried your

24    burden and you think the government is wrong in its

17:32:33 25    calculation, I want to hear about it.  I definitely want to

1    hear about it on Friday.

2            Okay. Anything further?

3            Court will take all of the other motions under

4    advisement and we will be issuing a written ruling.

17:32:44 5        There will be a determination made as to

6    whether or not a Franks hearing is required.

7            And other than that, anything further?

8            MS. BACON: Your Honor, what would be our

9    deadline to respond to that discrete issue?

17:32:57 10       THE COURT: Discrete issue. Probably ten

11   days.

12           MS. BACON: Plenty of time, Your Honor.

13           THE COURT: How many examples were in that?

14           MS. WHITAKER: I told Your Honor we had found

17:33:09 15  two so far. We had just started looking at the pen

16   registries.

17           THE COURT: Do you know how many examples? I

18   mean, how many --

19           MS. WHITAKER: In the affidavit, there are

17:33:19 20  probably I'd say maybe ten paragraphs that list pen

21   registries.

22           THE COURT: I am trying to say ten days is too

23   much or ten days --

24           MS. BACON: There are approximately ten

17:33:29 25  examples contained in the two paragraphs, and we will

1    respond to those within ten days.

2                    Under seal, Your Honor?

3                    THE COURT:  Under seal.

1                        C E R T I F I C A T E

2

3            I certify that the foregoing is a correct

4    transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8                 s/Lori A. Callahan
                  Lori Ann Callahan, RMR-CRR
9                 U.S. District Court, Suite 568
                  2 South Main Street
10                Akron, Ohio  44308
                  (330) 252-6022

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25