IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CR387 |
| Plaintiff, | ) | |
| v. | ) | JUDGE LIOI |
| | ) | |
| | ) | |
| JAMES C. DIMORA, et al. | ) | |
| Defendants. | ) | |
| | ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT DIMORA'S
MOTION IN LIMINE

Now comes the United States of America, by and through its attorneys, Barbara L.

McQuade, United States Attorney, and Assistant United States Attorneys Antoinette T. Bacon,

Nancy L. Kelley, and Ann C. Rowland and hereby responds to Defendant James C. Dimora's

Motion in Limine (Doc. 533).

**I.  Prejudicial and Inflammatory Language**

In this section of his motion, Defendant Dimora does not seek to preclude the use of any

substantive evidence.  Instead he asks the Court not to allow certain terms to be used at trial

claiming that they would unfairly prejudice the defendant.  With respect to the use of these terms,

Dimora does not distinguish between opening statement, questioning on direct or cross, and

closing argument.

Under Rule 403, a court may exclude relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Supreme Court has said that "unfair prejudice" "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilty on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*

This Court has presided over three of the four trials in the County corruption investigation. By the time of the Dimora trial, it will have presided over a fourth. To the best knowledge of the undersigned, this Court has not needed to admonish the United States about using language that would unduly have a tendency "to suggest decision on an improper basis" or which would "lure the factfinder into declaring guilty on a ground different from proof specific to the offense charged."

Dimora cites no cases that suggest that the words about which he complains would be unduly prejudicial.

1. Political Godfather

Defendant expresses concern that the United States will use the term "political godfather" during the trial. In support of his concern he states at page 8 of his motion, "During the trial of former Cuyahoga County Judge Bridget McCafferty a reference was made to Messrs. Dimora and Russo as her 'political godfathers.'" The undersigned undertook an electronic search of the

2

portions of the trial transcript in its possession for this phrase and found nothing.[1]  The only reference to this phrase occurred during the argument of the United States at sentencing.  See Exhibit A attached hereto: McCafferty sentencing transcript, pages 32 and 33.

There is nothing about the term "political godfather" that is inherently prejudicial or inflammatory.  Indeed, the word is often used in a positive way.  For example, The New Republic (March 19, 2007) quoted President Obama describing Emil Jones, the President of the Illinois Senate, as his "political godfather."  The article goes on to describe Jones as President Obama's mentor, thus equating the term "political godfather" to the term "mentor." http://www.discoverthenetworks.org/Articles/bobamasunlikelypoliticaledu.html.  Thus, when modified by the word "political," the term "godfather" loses much of whatever negative connotations the word godfather would have, say, in a Mafia prosecution.  Indeed, the word "godfather" standing alone can have an extremely positive connotation when used to describe a person entrusted to take the place of a child's parents.  In the political world, a political godfather often nurtures young politicians in the same type of positive way.   See the October 2011 article about presidential candidate Newt Gingrich in which the writer states:

> There is a reason that Newt is the only candidate who hasn't been openly criticized by the rest of the GOP field and why several of them publicly stated that he'd be their choice for Vice President. There is a deep reverence for his intellect. They know that he's the "GOP godfather".

(Emphasis added).

---

[1]Out of concern that the phrase might have been used during a portion of the trial for which the United States does not possess a transcript, the undersigned e-mailed Dimora's counsel and requested information about the trial reference to "political godfather."  In response, his counsel stated the United States referred to "Mr. Dimora as the Judge's [McCafferty's] political godfather at her sentencing. Tr., pp. 33 and 44."

3

http://politic365.com/2011/10/21/still-the-%E2%80%9Cgop-godfather%E2%80%9D/

Dimora wielded tremendous political power in the County during the time he solicited and accepted bribes.  It is probable that one or more witnesses in this case consider Dimora their political godfather and that this relationship will be important to the jury's understanding of the relationship between the witness and Dimora.

On the basis of the foregoing, Defendant's concern that the United States will abuse this term at trial is unfounded.

## 2.  County Reform

At page 8 of his motion, Dimora contends that "at previous trials[2] [the claim was made] that the government's indictments led to the transition in style of government in Cuyahoga County . . ."  Dimora further contends that this claim is factually inaccurate.  He does not state in which trial this claim was made, or in what context.[3]  Dimora seeks an order prohibiting the United States from raising the issue of County reform, claiming at page 9 that it would unfairly prejudice him.  The United States does not intend to conduct a mini-trial on whether this investigation led to County reform.  Nor does it intend to focus on events not within the scope of the conduct charged in the Indictment.[4]  However, it is possible that County reorganization could

---

[2]In an email sent to Dimora's counsel on November 17, 2011, the United States requested that defense counsel identify the trials to which they refer. The United States received no response to that email as of the date this pleading was filed.

[3]The United States is aware that in sentencing arguments, the impact of these crimes on the form of County government has been mentioned but is unaware of County reform being an issue in front of any jury.

[4]All references to the Indictment are to the Third Superseding Indictment.

be mentioned in the trial.  Many present and former County employees will testify whose work work histories were affected by County reorganization.  In describing their backgrounds, which the jury is entitled to know, these witnesses may make reference to a change in job status due to County reorganization.  In addition, Dimora has not yet responded to the Government's proposed stipulations.  It is possible that records custodians for the County would have to testify.  In the course of that testimony, County reform might be mentioned.  Further, Dimora was intercepted in several conversations discussing County reform efforts that were underway even prior to the searches on July 28, 2008.  It is possible that one or more of these conversations could become relevant.[5]

On the basis of the foregoing, Defendant Dimora's motion should be denied.

3. Kickbacks

Dimora seeks to preclude the use of the term "kickbacks."  He contends at page 7 of his motion, that the Indictment improperly uses the word "kickback" because that word does not appear in any of the charged statutes.  However, the Indictment contains several honest services mail fraud and wire fraud conspiracy and substantive counts.  Those counts were drafted with the benefit of the decision in *Skilling v. United States*, 130 S. Ct.2896, 2931 (2010) wherein the Supreme Court revisited the honest services fraud statute in an effort to clarify and define the contours of the conduct covered by the statute.  Specifically, the Court in *Skilling* narrowed the reach of the statute, limiting it to fraudulent schemes involving bribes or kickbacks. *Id*.  In so ruling, the Court made clear that "amorphous" conduct, including "some schemes of non-

_____

[5]In his motion in limine, Dimora identifies no specific evidence turned over to him in discovery that he seeks to limit.

5

disclosure and concealment of material information" which courts had previously permitted to fall within the statute, could not be prosecuted under the honest services fraud statute. *Id*. at 2932 (internal citation omitted).

Thus, post-*Skilling*, to convict a defendant of honest services mail or wire fraud, the government must prove that the fraudulent scheme involved bribery or kickbacks.  The Court in *Skilling* defined kickback as "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances]."  This is exactly the conduct the United States will prove at the Dimora trial.

It is difficult to imagine why the term "kickback" should not be used in this trial when (1) the Supreme Court has defined it; (2) the Supreme Court has stated that the United States is required to prove kickbacks or bribery in an honest services trial and (3) the Indictment alleged kickbacks.  Indeed, it would be like not using the term "crack" in a case in which the United States has alleged that a defendant distributed cocaine that had been "cooked" to convert it to "crack." The term "kickback," as evidenced by its repeated use in the *Skilling* opinion, is not inflammatory or prejudicial.  Rather, it is a term which accurately describes exactly the conduct with which Dimora is charged.

4.  "Corrupt commissioner," "Corruption scandal," Corruption investigation," and "County corruption investigation."

In essence, Dimora contends that the United States should not use the word "corruption" in this corruption trial.  Certainly, the United States will not use the word injudiciously or in a

6

way that would unfairly prejudice Dimora.  However, it must be noted that Counts 28 and 29

charge attempts to obstruct the investigation.  Count 28 alleges in part:

> 1.      From in or around December 2007 through the date of the filing of this Third
> Superseding Indictment, the FBI and Internal Revenue Service, Criminal Investigation
> Division ("IRS") were investigating, among other things, whether individuals and private
> companies had provided things of value, including free and discounted home
> improvements, to DIMORA and other public officials in return for their promise to
> perform official acts.  In the course of that investigation, federal grand jury subpoenas
> from the Northern District of Ohio were issued.

> 2.      On or about May 23, 2008, in one of the first overt steps in the investigation
> described above, FBI agents interviewed Steven Pumper about Pumper bribing PE37 and
> sought Pumper's cooperation in an investigation of <u>municipal public corruption</u>.
> Although the interviewing agents did not mention the County or any County official,
> Pumper volunteered, "I know you guys are thinking of DIMORA and Russo and them."

(Emphasis added.)  The Indictment goes on to specify numerous acts Dimora committed in

furtherance of his attempt at obstruction.

Given that the phrases "corruption investigation" and "County corruption investigation"

constitute an accurate shorthand description of the investigation Dimora attempted to obstruct, as

described in the Indictment, the United States should be permitted to use this term.  The use of

this term would thus not prejudice a properly- instructed jury.

In addition, it should be noted that Dimora did not object to the Court using the phrase

"Cuyahoga County public corruption investigation" in instructing potential jurors.  The Court's

instruction states in part:

> You are further instructed to refrain from reading or listening to anything touching
> upon this case, or the <u>Cuyahoga County public corruption investigation</u>, in any way.
> This prohibition includes any form of communication over the Internet, such as e-
> mail, instant messaging, websites, and blogs. If you are released as a juror, you will
> receive notification from the Court.

(Emphasis added).

Furthermore, the United States will be introducing evidence pursuant to an MLAT,[6] the

supporting documentation for which provides:

> Pursuant to the *Treaty between the Uniled States of America and the Government  of
> Canada on Mutual Legal Assistance in Criminal Matters,* the United States requests that
> Canada provide business records. The evidence sought relates to the offense of <u>corruption</u>
> of a public official, bribery, and interference with commerce.

(Emphasis added.)

On the basis of the foregoing, this Court should not put artificial limits on the use of these

phrases at trial.

## II. The Statute of Limitations

Without citing any particular evidence or counts of the Indictment, Dimora seeks to

preclude evidence of conduct that took place outside of the statute of limitations.

### 1.  The Dates Charged in the Indictment.

The counts listed below (and the dates charged in those counts) are implicated in

Dimora's motion.

Count 1 - RICO  Conspiracy (2000 - June 20, 2010):
      Starting dates of specified schemes B, C, D, E and F:
            B. Gabor Job Buying - Sept. 2005
            C. Gabor Judicial Corruption - Fall 2004

---

[6]As noted above, the defense has not yet responded to the proposed stipulations.  Should
the defense stipulate to the authenticity of the documents obtained through the MLAT, this
document may not need to be exhibited to the jury.

          D. Mohammad Bribe to Dimora - Oct. 2003

          E. Kleem Bribe to Dimora - April 2008

          F. Melaragno Bribe to Dimora - Summer 2002

Count 7 - Hobbs Act (Summer 2005 - May 30, 2008)

Count 8 - Hobbs Act (February 2003 - May 2008)

Count 12 - Hobbs Act Conspiracy (2001 - May 30, 2008)

Count 13 - Hobbs Act (2001- May 30, 2008)

Count 17 - Conspiracy to Violate Section 666 Violation (2004 - July 28, 2008)

Count 20 - Hobbs Act (early 2004 - July 28, 2008)

Count 22 - Hobbs Act Conspiracy (2005 - May 2008)

Count 23 - Hobbs Act (2005 - May 2008)

Count 26 - Hobbs Act Conspiracy (2000 - July 28, 2008)

Count 27 - Hobbs Act (2004 - July 28, 2008)

Count 31 - Conspiracy to Commit Mail Fraud & Honest Services Fraud (Aug. 2005 - July 28, 2008)

     2. The Continuing Offense Doctrine Extends the Statute of Limitations for Conspiracy, whether or not the Statute Requires an Overt Act.

     The continuing offense doctrine extends the statute of limitations, the classic example of a continuing offense being conspiracy.  *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999). "[F]or a conspiracy offense, the statute of limitations does not begin to run when all elements are first present, but rather begins when the offense expires . . . the statute of limitations would not run from the time of the first overt acts, but instead would run from the occurrence of the last act in furtherance."  *Id*. at 875-76; *United States v. Pizzonia*, 577 F.3d 455, 466 (2d Cir. 2009) (The law generally recognizes conspiracy as a continuing crime "that is not complete until the purposes of the conspiracy have been accomplished or abandoned."(internal citation and quotation omitted)).   For a conspiracy offense, the crime is not complete, for statute of limitations purposes,

until the purposes of the conspiracy have been accomplished or abandoned), *cert. denied,* 130 S. Ct. 1088 (2010); *United States v. Milligan,* 17 F.3d 177, 182 (6th Cir. 1994)(conspiracy is a continuing offense); *Steers v. United States*, 192 F. 1, 8 (6th Cir. 1911).

Citing three prior decisions, the Sixth Circuit stated in *United States v. Rashid*, 274 F.3d 407, 414-15 (6th Cir. 2001) that "the government is permitted to introduce evidence of early conspiratorial conduct that is insulated from prosecution by the statute of limitations as long as the conspiracy . . . has continued into the permissible prosecutable period and an overt act in furtherance of the conspiracy has been committed during that period." (Internal quotations omitted). As the *Rashid* court noted, "[T]his Circuit has held that even when evidence is presented of activities that occurred outside of the conspiracy dates charged in the indictment (as opposed to the statute of limitations dates), that did not constitute a fatal variance. *See United States v. Manning*, 142 F.3d 336, 340 (6th Cir. 1998) (holding that evidence of meeting between drug conspirators which occurred shortly before beginning date of the conspiracy as charged in indictment was minor variance); *United States v. Zelinka*, 862 F.2d 92, 97-99 (6th Cir. 1988) (evidence of drug deals occurring after ending date of conspiracy as charged in indictment was not fatal variance)."

"For conspiracy statutes that do not require overt acts, the conspiracy 'continues' for limitations purposes as long as its purposes have not been abandoned or accomplished." *Yashar*, 166 F.3d 875 n.1 (citations omitted); *United States v. McNair*, 605 F.3d 1152, 1213 (11th Cir. 2010) (For conspiracy statutes that do not require proof of an overt act, the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period), *cert. denied*, 131 S. Ct. 1600 (2011).

10

3.  <u>The Continuing Offense Doctrine Extends the Statute of Limitations for</u>
<u>Hobbs Act Bribery.</u>

Hobbs Act extortion is a continuing offense.  *United States v. Forszt*, 655 F.2d 101, 104 (7th Cir. 1981).  The statute of limitations is satisfied by a Hobbs Act bribery indictment alleging a continuous plan of extortion with multiple payments begun outside the statute of limitations and continuing to a date within the statute of limitations.  *United States v. Hedman*, 630 F.2d 1184, 1199 (7th Cir. 1980); *United States v. Provenzano*, 334 F.2d 678, 684 (3d Cir. 1964).  The same is true for Hobbs Act conspiracy.  *United States v. Rastelli*, 870 F.2d 822, 839 (2d Cir. 1989).

On the basis of the foregoing, Dimora's concerns about evidence being presented outside the applicable limitations periods are without merit and the motion should be denied.

Respectfully submitted,

Eric H. Holder, Jr.
Attorney General of the United States

Barbara L. McQuade
United States Attorney
Eastern District of Michigan

By:     /s/Ann C. Rowland
Antoinette T. Bacon (DC: 474696)
Nancy L. Kelley (OH: 0070031)
Ann C. Rowland (OH: 0015156)
Assistant U. S. Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852
(216) 622-3966 (phone)
(216) 522-2403 (facsimile)
E-mail: Ann.Rowland@usdoj.gov
E-mail: Antoinette.T.Bacon@usdoj.gov
E-mail: Nancy.Kelley@usdoj.gov

12

## CERTIFICATE OF SERVICE

I certify that on this date, a copy of the foregoing was filed electronically.  Notice of this filing

will be sent by operation of the Court's electronic filing system to all parties indicated on the

electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access

this filing through the Court's system.

/s/Ann C. Rowland
Ann C. Rowland
Assistant U.S. Attorney