**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:10CR387 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| JAMES C. DIMORA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of defendant James C. Dimora to dismiss the indictment for vindictive prosecution and request to conduct discovery.[1] (Doc No. 571.) Dimora has supplemented his motion. (Doc. No. 572.) The government opposes the motion (Doc. No. 575), and Dimora has filed a reply. (Doc. No. 591.)

*Background*

On September 14, 2010, the grand jury returned a multi-count indictment against Dimora, defendant Michael Gabor and several other individuals in Case No. 1:10CR387 (hereinafter "Dimora I"). The Third Superseding Indictment charges Dimora with RICO conspiracy, conspiracy to commit mail and wire fraud and honest services

---

[1] Dimora's motion suggests that he is also alleging prosecutorial misconduct. (*See* Doc. No. 571 at 1.) He, however, offers no arguments in support of this claim, and appears to only be pursuing a claim of vindictive prosecution.

mail fraud, Hobbs Act conspiracy and substantive Hobbs Act violations, bribery concerning programs receiving federal funds, tax fraud, conspiracy to obstruct, and destruction of records.

On October 20, 2011, more than one year after Dimora I was filed, a new indictment was returned against Dimora and defendant Michael Forlani in Case No. 1:11CR491 (hereinafter "Dimora II"). Both men were charged with Hobbs Act conspiracy, substantive Hobbs Act violations, conspiracy to commit mail and wire fraud and honest services mail and wire fraud. Forlani is also charged with additional crimes, including RICO conspiracy. While the various fraudulent schemes laid out in the Dimora II indictment are distinct from those in Dimora I, the Dimora II RICO conspiracy charged *against Forlani only* is similar to the RICO conspiracy charged against Dimora and Gabor in Dimora I.

In support of his motion to dismiss, Dimora argues that the government's decision to seek a second indictment little more than two months before the trial date in Dimora I was in bad faith. Dimora insists that the only purpose for the second indictment was to compromise his defense by making available to the public on the eve of trial, in violation of the protective order, "a large series of sensationally chosen and arrayed intercepted phone calls . . . ." (Doc. No. 571 at 2.)  According to Dimora:

> There is no possible reason for this unprecedented action other than to undermine Mr. Dimora's ability to exercise his right to a trial by jury and due process of law. The timing of the indictment, in the midst of preparations for the trial in Case No. 1:10CR387 and on the eve of the scheduled start of that trial, in connection with the release of the intercepted calls to the public shortly before the notification to the jurors achieved that goal, it [sic] has undermined Mr. Dimora's right to due process of law.

(*Id*. at 5.)

By his motion, Dimora seeks the dismissal of the indictment in Dimora I. In the alternative, he requests the opportunity to conduct discovery to develop additional facts to support his position, and asks that the Court convene an evidentiary hearing upon completion of the discovery process. The government believes that Dimora has failed to meet his initial burden of demonstrating "presumptive vindictiveness" such that he would be entitled to the dismissal of either indictment or to conduct additional discovery on the subject.

*Analysis*

At the outset, the Court observes that Dimora has attempted to challenge the filing of Dimora II on a variety of grounds, including double jeopardy. (Doc. No. 570.) The guarantee against double jeopardy "consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794 (1989). In *Pearce*, the Supreme Court rejected a double jeopardy challenge to the imposition of a harsher sentence following a successful appeal and retrial because it did not address any of the three constitutional protections. *Id*. at 723. Instead, the Court proceeded under a due process analysis and held that "vindictiveness against a defendant for having successfully attacked his first conviction must play no role in the sentence he

3

receives after a new trial." *Id.* at 725.  Here, Dimora's pretrial request to dismiss the initial indictment on the ground that a subsequent indictment was brought for purposes of harassment does not touch upon any of the protections afforded by the Fifth Amendment guarantee against double jeopardy.[2]  Instead, such a claim is properly considered in the context of due process.[3]

### Vindictive Prosecution

The government has broad discretion to initiate and conduct criminal prosecutions, and to determine what charges to bring. *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citing *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charges to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). This discretion, though broad, is not without its limits.  Prosecutors may not engage in selective prosecution, which denies equal protection of the law, *see Wayte*, 470 U.S. at 608, or vindictive prosecution, which violates due process rights. *See Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974); *see also*

---

[2]  In denying Dimora's motion to dismiss the present indictment on double jeopardy grounds, the Court ruled that the motion was premature because Dimora's jeopardy had not attached in either action, and that, when it did, his remedy would lie in the possible dismissal of Dimora II, the action for which he arguably could be subjected to a second prosecution for the same acts. (*See* Doc. No. 596 at 3-4.)

[3]  As it set forth in its opinion and order denying Dimora's motion to stay these proceedings pending an interlocutory appeal in the Sixth Circuit challenging the double jeopardy ruling, the Court believes that Dimora's true purpose for dressing a due process claim in double jeopardy clothes was to delay the start of the trial in this case. (*See* Doc. No. 596 at 4, n.2.) There is, of course, no immediate appeal from a denial of a motion to dismiss for vindictive prosecution. *See United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 264 (1982) ("We do not reach the question of prosecutorial vindictiveness, for we hold that the Court of Appeals was without jurisdiction . . . to review the District Court's interlocutory order refusing to dismiss the indictment.")

*Goodwin*, 457 U.S. at 372 (due process clause prohibits the government from prosecuting a defendant because of some specific animus or ill will, or to punish a defendant for exercising a legally protected right).

The Sixth Circuit has provided that prosecutorial vindictiveness can be proven two ways:

> A defendant can show "actual vindictiveness," by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or the Court can find a presumption of vindictiveness by applying the "realistic likelihood of vindictiveness" standard which focuses on the prosecutor's "stake" in deterring the exercise of a protected right and the unreasonableness of his actions.

*United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (citing *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) (further citation omitted)). Actual vindictiveness is shown "by producing 'objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights . . . .' " *Dupree*, 323 F.3d at 489 (quoting *Bragan v. Poindexter*, 249 F.3d 476, 481-82 (6th Cir. 2001)). "Attempting to show actual vindictiveness has been characterized as 'exceedingly difficult' and an 'onerous burden.' " *Id*. (quoting *Bragan*, 249 F.3d at 481, 483).

A defendant may show presumptive vindictiveness by demonstrating: (1) the exercise of a protected right; (2) the prosecutor's "stake" in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and (4) the intent of the prosecutor to punish the defendant for exercising the right. *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citing *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 722 (6th Cir. 1999)). "Presumably, if the first three elements are present, this may help establish grounds to believe the fourth is present, that there is the required 'realistic

5

likelihood of vindictiveness,' which the government would have to rebut." *Id.* (citing *Bragan*, 249 F.3d at 481-82); *see also United States v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008) ("We have held that to prove a realistic likelihood of vindictiveness, a defendant must demonstrate that the prosecutor has some 'stake' in deterring the petitioner's exercise of his rights, and that the prosecutor's conduct was somehow unreasonable.") (internal quotation and citations omitted).

The government posits that, in the event that Dimora met his ultimate burden of demonstrating vindictive prosecution, the appropriate remedy would be to bar the second prosecution in Dimora II, and not to dismiss the indictment in Dimora I. *See Suarez*, 263 F.3d at 481 (quoting *United States v. Andrews*, 633 F.2d 449, 455 (6th Cir. 1980) (Even if the prosecutor's conduct in bringing an additional charge constitutes vindictiveness, "the normal remedy is to 'bar the augmented charge.' ")). The Court agrees that the appropriate remedy for a successful demonstration of vindictive prosecution would be to dismiss the charges in Dimora II, the very charges Dimora claims were the result of vindictiveness. This reason alone is sufficient reason for the Court to deny Dimora's motion to dismiss the indictment in Dimora I.

As to the merits of his motion, Dimora offers no evidence or argument to support a finding of actual vindictiveness.[4] The Court, therefore, proceeds to evaluate whether Dimora has made a prima facie showing of a realistic likelihood of vindictiveness. *See, e.g., United States v. Goff,* 400 Fed. Appx. 1, 23 (6th Cir. 2010).

---

[4] Indeed, Dimora merely points to conduct on the part of the government which he believes demonstrates a "realistic or reasonable likelihood of vindictiveness." (Doc. No. 571 at 2.)

6

Under the first element, the exercise of a protected right, Dimora argues that he has refused to engage in plea negotiations, and has opted to exercise his "constitutionally protected right to seek a trial by jury." (Doc. No. 571 at 15.)

"Although the right to a trial by a jury of one's peers is a highly protected right, asserting this right by rejecting a plea bargain is not enough to provide evidence of an improper motive on the part of the prosecution." *Suarez*, 263 F.3d at 479. Thus, courts have been reluctant to find presumptive vindictiveness in the pretrial setting where additional or more severe charges follow a defendant's decision to seek a jury trial. In *Goodwin*, the Supreme Court explained that:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

457 U.S. at 381. *See United States v. Stewart*, 590 F.3d 93, 122-23 (2d Cir. 2009) (no presumption of vindictiveness as a general rule in a pretrial setting); *United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004) (no presumption of vindictiveness when pretrial addition of charges results from failure of plea bargaining); *but see Surarez*, 263 F.3d at 479 (presumption of vindictiveness may arise from pretrial addition of charges after defendant asserts protected right).

7

Beyond merely electing to go to trial, Dimora has also exercised his protected rights by filing a variety of motions designed to test the sufficiency of the indictment, the basis for the seizure of evidence from his home and his office, the interception of wire communications, and the admissibility of the evidence. However, Dimora cannot show that the government had any particular "stake" in preventing the assertion of these rights. The motions were not unusual, and were, in fact, similar to motions filed by other defendants who have been charged in the same FBI investigation that led to the filing of the present indictment. "[A] defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." *Goodwin*, 457 U.S. at 381. "It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id*. Thus, the mere filing of pretrial motions cannot serve to establish that the government had a "stake" in preventing Dimora from exercising his rights in the pretrial setting. *See Suarez*, 263 F.3d at 480 (failing to find that the prosecutor had a stake in preventing the defendant from filing pretrial motions, noting that "the additional burden on the prosecution from the motions in proportion to the burden for the upcoming trial itself is rather minimal"); *see also Moon*, 513 F.3d at 535-37 (the fact that the government had to file a superseding indictment after the defendant tested the indictment in a pretrial motion was insufficient to establish the necessary governmental "stake"); *United States v. Branham*, 97 F.3d 835, 850 (6th Cir. 1996) (same).

Dimora has not only failed to demonstrate that the government has a "stake" in deterring the exercise of his protected rights; he has also failed to show that the

government acted unreasonably in bringing Dimora II. In support of this prong, Dimora argues that the filing of Dimora II violated § 9-2.031 of the United States Attorney's Manual, entitled "Dual and Successive Prosecution Policy," otherwise known as the "Petite Policy." According to Dimora, this policy precludes the continuation of a federal prosecution following a pending or completed federal prosecution based on related acts or transactions unless certain prerequisites are met. By bringing a second indictment based on related conduct, Dimora argues that the government has violated its own policy, and, therefore, demonstrated that its conduct was not in good faith.

As Dimora concedes, however, the Petite Policy confers no substantive rights on defendants. Section 9-2.031(F) specifically provides:

> This policy has been promulgated solely for the purpose of internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, that are enforceable at law by any party in any matter, civil or criminal, nor does it place any limitations on otherwise lawful litigative prerogatives of the Department of Justice.

> All of the federal circuit courts that have considered the question have held that a criminal defendant cannot invoke the Department's policy as a bar to federal prosecution. *See, e.g.*, *United States v. Snell*, 592 F.2d 1083 (9th Cir. 1979); *United States v. Howard*, 590 F.2d 564 (4th Cir. 1979); *United States v. Frederick*, 583 F.2d 273 (6th Cir. 1978); *United States v. Thompson*, 579 F.2d 1184 (10th Cir. 1978) (en banc); *United States v. Wallace*, 578 F.2d 735 (5th Cir. 1978); *United States v. Nelligan*, 573 F.2d 251 (5th Cir. 1978); *United States v. Hutul*, 416 F.2d 607 (7th Cir. 1969). The Supreme Court, in analogous contexts, has concluded that Department policies governing its internal operations do not create rights which may be enforced by defendants against the Department. *See United States v. Caceres*, 440 U.S. 471 (1979); *Sullivan v. United States*, 348 U.S. 170 (1954).

UNITED STATES ATTORNEYS' MANUAL § 9-2.031(F) (July 2009), available at http://www. justice.gov/usao/eousa/foia_reading_room/usam/title9/2mcrm.htm.

9

Moreover, as the government points out, the Petite Policy does not preclude subsequent prosecutions for related conduct, but merely prohibits the initiation or continuation of subsequent prosecutions based on substantially the same act(s) or transaction(s). *See* U.S.A.M. § 9-2.031(A). As is clear from the Dimora II indictment, the counts in which Dimora is charged in Dimora II are not based on the same acts or transactions that supported the charges in Dimora I, as they are based on two schemes involving defendant Forlani that are not charged in Dimora I.[5] *See United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002) (The filing of a second indictment did not give rise to a presumption of vindictiveness because the "Government had every right to prosecute Gary for *both* of her fraudulent schemes.") (emphasis in original). Further, while the RICO conspiracy charged in Dimora II is similar to the RICO conspiracy charged in Dimora I, Dimora is not charged with RICO conspiracy in Dimora II. Thus, even if the Petite Policy could be properly considered in a motion to dismiss an indictment, there is no evidence that the government violated this policy when it sought an indictment in Dimora II.

Dimora also points to the timing of the filing of the Dimora II indictment as evidence of the government's unreasonable conduct. In support, he cites the Sixth Circuit's decision in *Poole,* where the court observed that the timing of new charges may

---

[5] Without ruling on the issue, the Court observes that the government's right to charge both a conspiracy and the underlying substantive claims would seem to foreclose Dimora's double jeopardy argument, inasmuch as Dimora II appears only to charge Dimora with the underlying predicate offenses that could have been charged in Dimora I as part of the RICO conspiracy but were not. *See Garrett v. United States*, 471 U.S. 773, 795 (1985), *reh'g denied*, 473 U.S. 927 (1985) (double jeopardy not violated by separate prosecutions for both predicate offense and conspiracy); *Pinkerton v. United States*, 328 U.S. 640, 643 (1946), *reh'g denied*, 329 U.S. 818 (1946) (the plea of double jeopardy is no defense to one conviction for commission of a substantive offense and another for a conspiracy to commit it).

play a role in determining the "stake" that the prosecutor may have in deterring the exercise of a protected right. *Poole*, 407 F.3d at 776. In *Poole*, however, the court noted that the timing of the superseding indictment provided at least some evidence of vindictiveness because the additional charges added in the superseding indictment were filed after the initial trial resulted in a mistrial. In reaching this conclusion, the court relied on the reasoning set out in the Supreme Court's decision in *Goodwin*, to wit: that a prosecutor's decision to add charges before trial "suggests that a presumption of vindictiveness is not warranted." *Goodwin*, 457 U.S. at 381. By contrast, the "prosecution's 'stake' is greater when it is forced to endure a complete new trial, or 'do over what it thought it had already done correctly.' " *Poole,* 407 F.3d at 776 (quoting *Goodwin*, 457 U.S. at 383). Because the Dimora II indictment was filed while Dimora I was still in the pretrial stages, the timing simply does not support Dimora's contention of vindictiveness.

The timing has even less probative value when the procedural history of Dimora I is taken into consideration. But for a continuance of the initial trial date granted at Dimora's request Dimora I would have been completed, or at least already in trial

proceedings, before the indictment in Dimora II was ever filed.[6] Given this procedural history, the timing of the second indictment becomes even less suspect.[7]

Finally, Dimora cites a litany of other alleged conduct that he believes supports a finding of vindictiveness, including the fact that the Dimora II indictment prominently features certain facts obtained through wiretaps. While he claims that certain conversations were repeated in the indictment in violation of the Court's protective order in Dimora I, he fails to identify any particular facts that were reproduced in violation of the protective order. Along those same lines, he argues that the government did not "need" to include certain facts in the Dimora II indictment to satisfy the pleading requirements of Rule 7(c) of the Federal Rules of Criminal Procedure, and the decision to include such facts could only have been motivated by a desire to put certain sensational facts before the press and public immediately prior to the trial in Dimora I. The Court is familiar with the indictment in Dimora II, and finds that it contains the same level of information and factual detail as many of the other indictments that have been returned in

---

[6] This case was originally assigned to the undersigned, and was reassigned to the docket of the Honorable Kathleen O'Malley on September 16, 2010, pursuant to L.R. 57.9(b)(3). It was returned to this Court's docket on January 21, 2011 when Judge O'Malley was elevated to the Federal Circuit. At the pretrial hearing on October 5, 2010 before Judge O'Malley, the government and counsel for each defendant jointly moved for a continuance of the trial beyond the time frame set forth by the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). On October 7, 2010, Judge O'Malley set the matter for trial to begin September 12, 2011. (Doc. No. 38.) The Court explained that it expected the parties to be ready for trial by July 2011. The September date was selected, however, because it was likely that the superseding indictment would add defendants and counts. Thus, but for the parties' request for additional time, and the anticipation of a superseding indictment, Dimora I would have been completed before Dimora II was filed.

[7] The government also notes that the grand jury returned the Dimora II indictment the day after Sabra Pierce Scott pleaded guilty to a one-count information in *United States v. Scott*, 1:11CR454, which dealt with conduct that is the subject of Counts 13-16 of Dimora II. The government represents that Scott will testify at Dimora II that Forlani bribed her in connection with the schemes charged therein. Given the government's representation that it will be relying on Scott's testimony to support some of the charges in Dimora II, it makes sense that it would wait until Scott had entered into a plea agreement before bringing the second indictment.

this district as part of the Cuyahoga County public corruption investigation. No animus can be presumed from the construction of the Dimora II indictment.

Dimora further accuses the government of using threats and intimidation. Specifically, he points to the fact that, in response to his motion to consolidate, the government "warned" Dimora it would be free to cross-examine him on the Dimora II "Forlani schemes" should he take the stand in Dimora I. (Doc. No. 571 at 18.) The practice of threatening a defendant with additional criminal liability to deter the exercise of protected rights violates due process. *See, e.g., Pearce*, 395 U.S. at 725 (threatening a defendant with more serious charges to deter that defendant from pleading nolo contendere violated due process). While the government accurately observed that the new charges, which had *already* been returned in Dimora II, would have been a proper subject of cross-examination (as would much uncharged "other-acts" evidence), there is no evidence that the government threatened Dimora with more serious charges to deter the exercise of a protected right.[8] Ultimately, the Court finds that these additional complaints fail to demonstrate unreasonableness that would support a finding of vindictiveness.[9] *See Suarez*, 263 F.3d at 482 (rejecting defendant's attempts to "shoehorn all of his complaints

---

[8] Moreover, the Court has already stated in its opinion and order on Dimora's motion to consolidate that it is "inclined to prohibit the government from introducing acts directly related to the charges in Dimora II for impeachment purposes should Dimora take the stand in Dimora I." (Doc. No. 578 at 15-16.)

[9] Dimora also offers his belief that the government "attempted to manipulate the assignment of Case No. 1:11CR491 [Dimora II] in order to get it moved to this Court." (Doc. No. 572 at 1; *see* Doc. No. 571 at 3.) This contention is pure fantasy. The record clearly shows that the matter was transferred to the docket of the undersigned pursuant to the Court's criminal local rules, which provide for the transfer of related cases. L.R. 57.9(b)(3). As the government was required to do under the local rules, it identified Dimora II as related to other cases (including Dimora I) already on the Court's docket. The government played no role in the decision to transfer. Instead, the case was transferred to this Court, under the local rule, by the transferor and transferee judges, upon their own independent analysis that the case was related to cases already on this Court's docket. (*See* Case No. 1:11CR491, Doc. No. 30.)

(the new indictments, the use of his proffer, and the taking of his statements outside the presence of counsel . . .) into showing that he was prosecuted 'vindictively' ").

Because the Court cannot find that the government had a sufficient "stake" in preventing Dimora from exercising his constitutional right to a jury trial and his right to file pretrial motions, and further cannot find that the government acted unreasonably in bringing Dimora II, Dimora is unable to establish a prima facie case of prosecutorial vindictiveness.

However, even assuming that Dimora had made a prima facie showing, the government has adequately rebutted any presumption of vindictiveness. In determining whether a prosecutor has rebutted such a presumption, the Court must determine "whether there exists objective information in the record to justify the increased sentence or additional charges." *Poole*, 407 F.3d at 776 (citing *Goodwin*, 457 U.S. at 374). "[O]nly objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." *Andrews*, 633 F.2d at 456.

In a pretrial hearing on Dimora's motion to consolidate, counsel for the government suggested that, while the government could have charged the crimes set forth in the Dimora II indictment as part of a fourth superseding indictment in the present action, it ran out of time to do so. (*See* Doc. No. 548 at 3; Doc. No. 571-2 at 38.) Specifically, counsel for the government explained:

> Frankly speaking, the reason we didn't bring them in the same indictment is because of time. We just ran out of time and we didn't finish the rest of the Forlani schemes and believed that it was important to supersede Dimora with a RICO conspiracy as soon as possible because we understood that we had a September trial date. And so we had to make the very tough decision of do we keep all of Forlani's conduct, Defendant

14

Forlani's conduct together in one indictment, or do we put some with the Dimora indictment as it was ready and then do some in a separate trial? And we just made the decision, let's group all of Mr. Forlani conduct into the same indictment.

And we were very mindful of the time that we returned – that we asked the grand jury to return the RICO indictment in Dimora I, that we were under the clock. And we just, because it was, as Your Honor sees the scope of the criminal conduct here, there is [sic] so many schemes or so many years, that we just didn't have the resources to be able to get that all together.

So that's why this indictment came later, focusing more on Defendant Forlani's conduct and keeping all of his together while still doing the best we could to keep the original trial date, the September 2011 trial date in the Dimora case.

(November 18, 2011 Hearing Transcript, Doc. No. 571-2 at 38-39.)

This explanation would have adequately rebutted any prima facie case of presumptive vindictiveness as it finds support in the records of Dimora I and Dimora II. *See Moon*, 513 F.3d at 536 (crediting government's explanation that it did not originally bring false statement charge in prior indictments because "it did not want to delay the trial start date"); *Poole*, 407 F.3d at 777 (presumption of vindictiveness rebutted because filing of additional charges objectively based upon a re-evaluation of the case). As the Court observed in its opinion and order denying Dimora's motion to consolidate, the focus of each indictment was different. (Doc. No. 578 at 8-9.) The RICO conspiracy in Count 1 of Dimora I charged the county as the enterprise, while the RICO conspiracy in Count 1 of Dimora II charged Forlani and his related business entities as the enterprise.[10] Further, while Dimora I covers a variety of alleged schemes involving Dimora, Gabor, and other co-conspirators, Dimora II focuses exclusively on the alleged schemes

involving Forlani and his business entities.[11] Thus, while these actions are certainly related, there is a logical line of demarcation separating the two, which lends further support for the government's decision to charge these crimes separately.[12]

*Right to Discovery*

"[W]here there has been a prima facie showing of 'a realistic likelihood of vindictiveness,' it is incumbent upon the district court to 'conduct an evidentiary hearing where the government's explanations can be formally presented and tested.' " *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (quoting *Andrews*, 633 F.2d at 457). "And a criminal defendant 'may […] be entitled to discovery on the issue of selective prosecution if he introduces 'some evidence tending to show the existence of the essential elements of the defense.' " *Id*. at 1146 (quoting *United States v. Schmucker*, 815 F.2d 413, 418 (6th Cir. 1987) (further quotations and citations omitted)). Because Dimora has failed to come forward with "some evidence" of vindictiveness, this is not one of the "rare cases where the defendant[ is] entitled to discovery on the issue of whether the government's decision to prosecute was tainted by improper motivation." *Id*. at 1141. *See, e.g., United States v. Sanders*, 211 F.3d 711, 719 (2d Cir. 2000) (finding no right to discovery where defendants failed to offer any evidence of retaliation).

---

[10] Dimora is charged as a co-conspirator in Count 1 of Dimora I, but is not charged in Count 1 of Dimora II.

[11] In fact, a reading of the Dimora II indictment leads to the inescapable conclusion that Forlani, and not Dimora, is the primary target of this subsequent action. This fact further dispels the notion that the government brought Dimora II for the purpose of harassing Dimora.

[12] In addition, it appears from the face of the Dimora II indictment that there is "objective evidence" that supports the charges. *See United States v. Roach*, 502 F.3d 425, 445 (6th Cir. 2007). Moreover, the Dimora IIiIndictment was "approved by the grand jury and therefore 'presumed to have rested on probable cause.' " *Lawson*, No. 08-21-KSF, 2009 U.S. Dist. LEXIS 57513, at *13 (E.D. Ky. July 6, 2009) (quoting *Suarez*, 263 F.3d at 481).

*Conclusion*

For all of the foregoing reasons, Dimora's motion to dismiss the indictment for vindictive prosecution or, in the alternative, to conduct discovery on the subject of vindictive prosecution, is DENIED.

**IT IS SO ORDERED**.

Dated: January 9, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**