## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.: 1:10-CR-00387 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE SARA LIOI |
| | ) | |
| JAMES C. DIMORA, et al., | ) | DEFENDANT DIMORA'S |
| | ) | OBJECTIONS TO |
| Defendants. | ) | GOVERNMENT'S PROPOSED |
| | ) | FORFEITURE JURY |
| | ) | INSTRUCTIONS |

Now comes Defendant James C. Dimora and hereby objects to the Government's proposed jury instructions filed on March 9, 2012. See Docket No. 737.

### I. **Definition of Proceeds.**

Defendant Dimora objects to the government's proposed definition of proceeds in the Government's Proposed Jury Instruction ("U.S.") No. 4. First, the government has submitted a "gross receipts" definition that is, at best, applicable only to the RICO forfeiture allegations. As argued below, the gross receipts definition is not even applicable to the RICO forfeiture. The government has not submitted a definition of proceeds applicable to the non-RICO counts (Counts 2-28). Those latter counts invoke forfeiture under 18 U.S.C. 981(a)(1)(C), which was enacted in 2000 as a part of the CAFRA reforms. Forfeitures under section 981(a)(1)(C) have

1

their own *statutory* definition of proceeds. The definition is found in section 981(a)(2), which is also part of the CAFRA statute.

Section 981(a)(2)(B) is applicable to cases like this one in which lawful goods and services were sold or provided in an allegedly illegal manner. The provision defines "proceeds" as "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The [defendant] shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity." *See, e.g., U.S. v. Nacchio*, 573 F.3d 1062, 1089 (10th Cir. 2009)(leading case on this issue).

Defendant Dimora is unable to prove the direct costs of the contractors without access to their records, which have not been provided. He therefore requests that the Court decide the amount of the contractors' direct costs, if necessary, at a later date, after an evidentiary hearing. He also requests a reasonable period of time in which to obtain discovery from the contractors limited to the issue of their direct costs. If the Court rules that it will not, in the exercise of its discretion, hold Dimora jointly and severally liable for the "proceeds" obtained by the contractors, then it will not be necessary to determine the contractors' direct costs.

The RICO statute does not define the term "proceeds." While there is case authority to support a gross receipts definition of proceeds, the better view is that a RICO defendant is entitled to deduct the direct costs of obtaining the business receipts—whether legal or criminal— that the government is seeking to forfeit. This is the long held view of the Seventh Circuit. *E.g., U.S. v. Genova*, 333 F.3d 750, 761 (7th Cir. 2003)("proceeds" means "profits net of the costs of the criminal business"); *U.S. v. Masters*, 924 F.2d 1362, 1369-70 (7th Cir.), cert. denied, 500 U.S.

919 (1991)(under RICO "the proceeds to which the statute refers are net, not gross, revenues-profits, not sales, for only the former are gains"); *U.S. v. Marcello*, 2009 U.S. Dist. LEXIS 28314, *3 (N.D. Ill. Apr. 6, 2009)(under RICO, gamblers were entitled to credit for their "overhead costs" including cost of gambling devices and payments to bar owners); *U.S. v. Morrison*, 656 F. Supp.2d 338 (E.D.N.Y. 2009)(RICO defendant is entitled to deduction for cost of acquiring cigarettes he sold in violation of the CCTA). *See also U.S. v. Milicia*, 769 F. Supp. 877 (E.D. Pa. 1991), appeal dismissed, 961 F.2d 1569 (3d Cir. 1992)(pharmacist convicted of illegally dispensing controlled substances entitled to deduction for wholesale cost of the illegal prescriptions he filled).

### II. "But for" Theory.

Defendant Dimora also objects to the government's request for an instruction that "'proceeds' means the property that the person would not have obtained *but for* the commission of the offenses." U.S. Requested Forfeiture Instruction No. 4. Although the government cites many cases where a "but for" analysis was applied—or misapplied, none of the cases involves a jury instruction. There is no "but for" language in the RICO statute. The "but for" theory was created by the Seventh Circuit to deal with a narrow issue not presented here. The "but for" theory was applied by that court solely to the forfeiture of salaries, bonuses and pension plans to determine whether they were "acquired or maintained" by the RICO defendant's racketeering activity. The court of appeals held that the trial court should have determined "what portion of [defendant] Horak's interests [in his salary, bonuses, and profit sharing and pension plans with Waste Management, the RICO enterprise] would not have been acquired or maintained 'but for' his racketeering activities. That is, in order to win a forfeiture order, the government must show

on remand that Horak's racketeering activities were a cause in fact of the acquisition or maintenance of these interests or some portion of them." *U.S. v. Horak*, 833 F.2d 1235, 1243 (7th Cir. 1987). *Accord U.S. v. DeFries*, 129 F.3d 1293, 1313 (D.C. Cir. 1997)(but for defendants' illegal tampering with ballots in union election they would not have acquired their union salaries because the racketeering activity infected the entire election; but for the tainted elections, the defendants would not have received their union salaries); *U.S. v. Regan,* 699 F. Supp. 36, 38-39 (S.D.N.Y. 1988)(applying but for test, court continues restraint on defendants' assets to secure the equivalent of their salaries during the period when they allegedly participated in the racketeering activity).

The "but for" theory should not be applied outside of the narrow context which gave rise to the theory. The government's effort to use the theory broadly to determine what constitutes the proceeds of a racketeering offense should, at a minimum, be viewed cautiously. 2 David B. Smith, *Prosecution and Defense of Forfeiture Cases,* para. 13.02[1][c], 13-26 n. 40 (Dec. 2011 ed.). Here, the government is not seeking to forfeit Defendant Dimona's salary during the time of the alleged racketeering activity, nor is it seeking to forfeit his pension benefits.

Instead of the government's proposed instruction, Defendant Dimora requests that the Court instruct that "'proceeds' are something which is obtained in exchange for the sale of something else." *U.S. v. Khanani*, 502 F.3d 1281, 1296 (11th Cir. 2007). That is the common understanding of the word "proceeds." *See also U.S. v. Maali*, 358 F. Supp. 2d 1154 (M.D. Fla. 2005)(rejecting government's theory that any criminal conduct which produces cost savings thereby generates "proceeds").

### III. Joint and Several.

Instruction No. 4: Proposed instruction: Additionally, each participant in a criminal scheme is responsible in forfeiture for the full amount of the proceeds realized by the scheme. As such, all participants are responsible for the amount of proceeds realized by each other. Thus, a participant who receives a bribe is responsible in forfeiture for: (1) the amount of the bribe he receives; and, (2) for the amount of proceeds realized by the payer of the bribe.

This instruction is both improper and incorrect. Joint and several is not a matter for the jury. There should be no instruction relating to this issue given to the jury.

Moreover, joint and several is not mandatory or automatic as this instruction reads but discretionary. See Castro v. U.S., 248 F. Supp. 2d 1170 (S.D. Fla. 2003) (declining to impose joint and several liability). Moreover, joint and several is only appropriate where it is impossible to distinguish what proceeds the individual defendant received. See US v. Panno, 1987 US Dist. LEXIS 4155 (ND Ill.); US v. Castro, 248 F.Supp.2d 1170 (SD Fla 2003).

### IV. Burden of Proof.

Defendant Dimora believes that the 3rd Circuit's view on the burden of proof is what is appropriate and constitutionally required and request that all references to burden of proof be changed to "beyond a reasonable doubt."

### V. "Each Participant in the Criminal Scheme."

The Indictment failed to notify Mr. Dimora that the Government was seeking joint and several liability or any proceeds other than those received by Mr. Dimora and Mr. Gabor as it relates to Count 1. Therefore, Mr. Dimora objects to all language in the instructions that allow

5

for this theory of recovery. This includes "each participant in the criminal scheme" in Instruction Nos. 2 and 5 and the second paragraph of Instruction No. 4.

### VI. "Commonly referred to as."

These phrases in Instruction No. 2 should be eliminated as unnecessary and inviting the jury to employ its understanding of commonly used words.

### VII. Double counting, etc.

References to double counting (Instruction Nos. 5 and 9) and the entirety of Instruction No. 8 are unnecessary and confusing. The jury should be instructed only on what it should be considering and not instructed on matters not within its purview.

### VIII. Source of Influence/Facilitation.

Mr. Dimora objects to United States' Requested Forfeiture Instruction No. 2 and all of Instruction No. 6. The Government refers to a type of forfeiture "commonly referred to as 'facilitation forfeiture.'" 18 U.S.C. § 1963(a)(2)(D) is not a "facilitation forfeiture" statute. The word "facilitation" does not appear in the 18 U.S.C. § 1963(a)(2)(D) nor is it used by the United States Courts that have interpreted this statute. 18 U.S.C. § 1963(a)(2)(D) provides a basis for forfeiture only if the property sought is a "property . . . of any kind affording a source of influence over: any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; . . ." Mr. Dimora objects to paragraph 2 of Instruction No. 2 and all of Instruction No. 6 being given to the jury in any form. First, there has been no allegation that this property has been a property "affording a "source of

6

influence over the enterprise," to wit Cuyahoga County. Second, there is no evidence that the property continues to afford a "source of influence over Cuyahoga County, in this case the alleged enterprise. Third, the notion that a home at which, allegedly, some meetings were held where there ensued some discussion with alleged coconspirators has never been held to create a situation wherein the property was "affording a source of influence" over the enterprise. There is simply not sufficient evidence that the home afforded a source of influence over the enterprise to submit this theory to the jury. The evidence does not allow for a conclusion that the home was a source of influence over the illegal enterprise. The Government seems to be erroneously indicating that affording a source of influence means facilitation.

In the case cited by the Government, United States v Rudaj, the property was a building used as the site of an illegal gambling operation, that is, the enterprise operated out of the building in question. In the case cited by the Government, United States v Angiulo, the property was cash stored at the site of a gambling enterprise or adjacent thereto. In other words, the only cases in which forfeiture was permitted under the source of influence theory, absent a clearly articulated continuing influence, on the enterprise involve fact patterns in which the property was an integral part of the enterprise, such as, the site of the enterprise or an essential component of the enterprise. There are no allegations, in this case, about the property sought, that are even remotely close to any previous attempt by the Government to seek property based on an allegation of some meetings having been held at a home. While Defendant Dimora believes that Angiulo and Rudaj were decided incorrectly (in so far as they appear not to require a need for a continuing influence), they are clearly distinguishable on the facts.

Mr. Dimora further objects to the use of the word facilitation in connection with this request in any manner. 18 U.S.C. § 1963(a)(2)(D) is not a "facilitation" statute and the request

7

to seek the forfeiture of the home on a facilitation theory is contrary to law. The most recent submission by the Government (sent via email on 3/9/12 at 9:14 a.m. to all parties and the Court and attached hereto as Exhibit A) confirms that the Government is confusing a facilitation statute with the influence statute at issue here.

<div style="margin-left: 40%">

Respectfully submitted,
WILLIAM T. WHITAKER CO., L.P.A.

/s/ William Whitaker
William T. Whitaker # 0007322
Andrea L. Whitaker # 0074461
54 East Mill Street, Suite 301
Akron, Ohio 44308
(330) 762-0287; (330) 762-2669 Facsimile
whitaker@whitakerlawlpa.com
Attorneys for Defendant Dimora

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed this 10th day of March, 2012. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

<div style="margin-left: 40%">

/s/ William Whitaker
William Whitaker

</div>