UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:10CR387 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| JAMES C. DIMORA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of defendant James C. Dimora for release from detention pending sentencing and a second trial. (Doc. No. 756). The government opposes the motion (Doc. No. 764), and Dimora has filed a reply. (Doc. No. 773.) The Court permitted Dimora to supplement his motion with supporting evidentiary materials (Doc. No. 784, filed under seal), and the government has responded to this submission.[1] (Doc. No. 787.)

*Background*

On March 9, 2012, after a 37 day jury trial, the jury returned 37 guilty verdicts against Dimora relating to 33 of 34 counts in which he was charged. He was acquitted by the jury on one count. The charges of which Dimora was found guilty included: RICO conspiracy, conspiracy to commit mail and wire fraud and honest

---

[1] Having previously conducted a bond hearing on the matter, and having reviewed defendant Dimora's motion and the supplemental materials offered in support of his motion, the Court finds that no further hearing is necessary. Likewise, finding that all of the issues are fully briefed, the Court denies Dimora's motion to file a reply to the government's response to his supplemental submission. (*See* Doc. No. 863.)

services mail fraud, Hobbs Act conspiracy, bribery concerning programs receiving federal funds, tax fraud, obstruction of justice, and destruction of records. (Dimora Verdicts, Doc. No. 738.) Dimora's co-defendant, Michael D. Gabor, was found guilty by the jury on nine charges contained in seven counts charging similar fraud and conspiracy-related offenses. He, too, was acquitted by the jury on one count. (Gabor Verdicts, Doc. No. 739.)

Immediately following the verdict, the government moved to revoke the bonds of both defendants, and the Court conducted a bond revocation hearing, at which time the Court entertained oral argument from counsel. At no time during the hearing did counsel for either defendant seek to, or request leave to, offer witnesses or evidence on the subject of bond pending sentencing. Moreover, while counsel for Dimora emphasized his client's compliance with the terms of his pre-trial bond, his appearance at every court hearing, his strong ties to the community, and the need to work with counsel to prepare for his second trial, no mention was made of any health condition that would make flight difficult.

At the conclusion of the hearing, and after consulting with a representative from Pretrial Services on the subject of electronic monitoring, the Court granted the government's motion, and remanded both defendants into the custody of the U.S. Marshals. In revoking bond, the Court determined that it could not make the requisite finding by clear and convincing evidence that the defendants would not pose a flight risk. In reaching this conclusion, the Court emphasized the fraudulent and obstructive nature of the crimes for which the defendants had been convicted, as well as the deceptive

behavior underlying these convictions. (Bond Revocation Hearing Transcript, Doc. No. 756-1 at 16-17.)

Through the present motion, defendant Dimora moves for release from detention. He seeks to be free on bond through sentencing, and until after he is tried in a second matter that is pending before this Court. *See United States v. Forlani, et al.*, Case No. 1:11CR491. Dimora's sentencing in this case is scheduled for July 25, 2012, and his second trial, in Case No. 1:11CR491, is scheduled to begin on October 17, 2012 with jury selection. In support of release, he reiterates his compliance with pre-trial bond conditions, his timely appearance in court, and his strong network of family and friends. He also raises, for the first time, medical needs that he believes "impede any possibility a lifestyle necessary to flight." (Doc. No. 756 at 3.)

*Discussion*

Dimora seeks release pending sentencing pursuant to 18 U.S.C. § 3143(a)(1), which provides:

> (a)(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence…be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

The statute creates a presumption in favor of detention, *United States v. Poulsen*, No. CR2-06-129, 2008 U.S. Dist. LEXIS 112879, at *5 (S.D. Ohio April 7, 2008) (citing 27 *Moore's Federal Practice* § 646.13 (Matthew Bender 3d ed.) ("[T]he Bail Reform Act creates a presumption in favor of detaining a convicted defendant pending sentence or appeal.")), *see United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988) (quotation and

citation omitted), and the defendant bears the burden of proving by clear and convincing evidence that he does not pose a danger to the community and that he is not likely to flee. *See Vance*, 851 F.2d at 169 (quotation and citation omitted).

In support of continued detention, the government offers several reasons why it believes that Dimora is likely to flee, including: (1) the fraudulent and deceptive nature of his crimes; (2) the fact that Dimora was recently divested of most of his assets in forfeiture, including his 50 percent interest in his family home; and (3) the fact that he is facing a lengthy prison sentence. With respect to the last reason, the government represents that a conservative estimate of any sentence Dimora may receive falls within the 235-293 month range. (Doc. No. 764 at 3.) Given that Dimora is 56 years of age and may spend much of the remainder of his life in custody, the government insists that Dimora has every incentive to flee the jurisdiction.

Defendant Dimora contends that his "lifetime of association with and residence in Cuyahoga County," and his "network of family and friends," support a likelihood that he will not flee. (Doc. No. 756 at 3.) He offers the affidavits of individuals living in Cuyahoga County, who attest to lifelong friendships with Dimora and his family. (Doc. No. 784, Ex. B, C.) The Court finds several problems with this showing. First, it was his association with Cuyahoga County that he used to commit the various fraudulent crimes for which he was convicted. As County Commissioner, Dimora abused his position of trust to secretly benefit himself and his designees at the expense of the County and the taxpayers. Having so thoroughly exploited this connection, it cannot now be relied upon to support post-trial release. *See, e.g., United States v. Santiago-Mendez*, 599 F. Supp. 2d 95, 109 (D. P.R. 2009) (quoting *United States v. Abuhamra*, 389 F.3d

4

309, 320 (2d Cir. 2004) ("granting bail to a policeman who fabricates evidence may 'undermine the deterrent effect of the law' ") (further quotation and citation omitted)).

Second, extensive trial testimony and evidence established that Dimora committed his profit-driven crimes with people whom he considered to be close friends. When the conspiracy was discovered, Dimora once again turned to his friends to assist him in covering it up. Given Dimora's willingness to exploit his friends to further his criminal pursuits, the Court finds that there is every reason to believe that he would not hesitate to prevail upon friends to help him flee. *See United States v. Nicolo*, 706 F. Supp. 2d 330, 335 (W.D. N.Y. 2010) (evidence that the defendant "would abuse friends and business relationships if there was even [the] slightest possibility that [he] would benefit from it" weighed heavily against release pending appeal).

Nor does the Court find persuasive Dimora's argument that his devotion to his family will provide an incentive not to flee. There was substantial evidence offered at trial that Dimora demonstrated an apparent lack of concern for his family during the charged conspiracy. *See United States v. Malquist*, 619 F. Supp. 875, 879 (D. Mo. 1985) (concern for supportive family did not prevent the defendant from committing the offenses for which he was convicted). In one particular wiretap, Dimora explained to a coconspirator that his wife, while aware that Dimora planned to be unfaithful and engage in immoral behavior during a planned trip to Las Vegas with several coconspirators, would not leave him because she was unable to provide for herself.

In fact, his apparent lack of concern for his family is demonstrated in his willingness to expose his wife to possible criminal charges by including her in his efforts to conceal his crimes. Evidence at trial demonstrated that, on the same day a

5

coconspirator, Steven Pumper, was first approached by the FBI, Dimora directed his wife to write approximately 30 checks to various contractors who had provided Dimora with free home improvements in exchange for help acquiring county contracts. Not only does the Court believe that Dimora's family would pose no obstacle to a decision to leave the jurisdiction, it also appears that he would not hesitate to expose his family to criminal sanctions by employing them in an effort to flee. *See United States v. Davis*, 664 F. Supp. 2d 86, 91 (D.D.C. 2009) (finding that the "[t]he defendant's disregard for his wife's welfare [by allowing her to testify at trial and to expose herself to criminal liability] in the face of overwhelming evidence of his guilt illustrated his desperation to avoid being convicted and potentially incarcerat[ed]").

That Dimora would conspire with family and friends to commit the crimes for which he was convicted is troubling. That these same crimes involved fraudulent, dishonest, and obstructive conduct, which included falsifying evidence to thwart the FBI's investigation and fixing judicial actions to benefit himself and his family and friends, is even more troubling. It appears as though this conduct did not involve a momentary lapse in judgment, but represented repeated, concerted acts over a number of years. *See Nicolo*, 706 F. Supp. 2d at 334 (defendant's deceitful and fraudulent behavior stretched over many years and demonstrated that he could not be trusted to abide by any conditions of release); *Davis*, 664 F. Supp. 2d at 90-91 (agreeing with government's assertion that "defendant consistently lied" in the course of committing fraud offense); *United States v. Nouri*, 07 Cr. 1029 (DC), 2009 U.S. Dist. LEXIS 87781, at *5 (S.D.N.Y. Sept. 8, 2009) (noting that defendant "has engaged in dishonest and obstructive conduct" and had "committed fraud"). Based upon the evidence in this case, it appears that

6

Dimora's actions over this time period, and the actions taken by his friends at his direction and on his behalf, were calculated to deceive other government employees and the public, and to conceal the criminal activity from the authorities. The Court is unpersuaded that defendant Dimora would not employ similar conduct to elude capture. This level of disregard for the justice system, identified in the government's brief, leaves the Court skeptical that Dimora would abide by the terms and conditions of release.

Defendant suggests, however, that his poor health makes any thought of flight a near impossibility. In support of this contention, he has filed medical documentation under seal. (*See* Doc. No. 784, Ex. A.) However, health problems alone do not necessarily mean that a defendant does not pose a flight risk or a risk of danger to others. *See Nicolo*, 706 F. Supp. 2d at 332; *see, e.g., United States v. Rogers*, No. SA:06CR272 (I)-XR, 2006 U.S. Dist. LEXIS 39277, at *1-*2 (W.D. Tex. June 12, 2006) (rejecting defendant's argument that his age—63—his recent heart attack, and absence of past violent behavior, meant that he did not pose a risk of flight or danger to others). Notwithstanding Dimora's health concerns, the fact remains that he was able to actively participate in a lengthy trial, which involved his daily travel from Cleveland to Akron and long days of trial and after-hours trial preparation. Nothing Dimora has presented in support of these recently identified medical conditions suggest to the Court that he is not healthy enough to leave the jurisdiction, and seek medical treatment in another locale.

Finally, Dimora notes his appearance for all court proceedings, as well as his compliance with all pre-trial reporting conditions imposed by Pretrial Services. "It is not unusual for persons seeking pre-sentence release to point to their *compliance* with pre-trial release orders as evidence that they will appear for sentencing." *United States v.*

*Hanhardt*, 173 F. Supp. 2d 801, 806 (N.D. Ill. 2001) (emphasis in original), *rev'd in part on other grounds*, 361 F.3d 382 (7th Cir. 2004). "The argument is routinely rejected because prior to trial there is the possibility of no imprisonment, which evaporates upon a finding of guilt." *Id.* (citing *United States v. Manso-Portes*, 838 F.2d 889 (7th Cir. 1987)). Prior to trial, Dimora had asserted his innocence in the press, and had insisted that he would be exonerated at trial. Now that vindication is no longer available, an important incentive for him to appear in court is gone. *See Malquist*, 619 F. Supp. at 879 (rejecting evidence of pre-trial appearance in court where defendant had previously appeared because he believed that he would prevail at trial); *see also United States v. Jinwright*, No. 3:09CR67-W, 2010 U.S. Dist. LEXIS 85677, at *18 (W.D.N.C. July 23, 2010) ("Something has changed since trial; Defendant is no longer presumed innocent but is guilty of the counts of conviction. His legal status has changed, increasing his incentive to flee.")

The Court cannot find that defendant Dimora has established by clear and convincing evidence that he does not pose a flight risk. Dimora is facing considerable time in prison, he has divested himself of two of his most valuable assets—his interest in his house and his retirement account—and he is facing the prospect of a drastic change in lifestyle in the form of incarceration for a potentially lengthy period of time.[2] Based on all of these factors, and after weighing the evidence submitted by Dimora in support of release, the Court must conclude that he poses a significant risk of flight, and denial of

---

[2] The Court has also taken into account the fact that the extent of Dimora's criminal exposure is not yet fully known, as he still has to stand trial in Case No. 1:11CR439 later this year. *See United States v. Bonavia*, 671 F. Supp. 752, 753 (S.D. Fla. 1987) (factoring in defendant's upcoming criminal trials as evidence of a flight risk).

his motion is appropriate. *See, e.g., United States v. Madoff,* 316 F. App'x 58, 59 (2d Cir. 2009) ("As to the incentive to flee (based on his age and exposure to a lengthy imprisonment), we consider that such an incentive naturally bears upon and increases the risk of flight"); *Nicolo*, 706 F. Supp. 2d at 333 (a lengthy sentence, coupled with poor health, provide powerful incentive to flee); *Malquist*, 619 F. Supp. at 879 (having divested himself of all assets, the defendant had "nothing to lose by fleeing the jurisdiction"); *Nouri,* 2009 U.S. Dist. LEXIS 87781, at *5 (prospect of lengthy sentence of 20 years provided incentive to flee).

*Conclusion*

Taking into consideration all of the relevant factors, as well as the evidence Dimora offered in support of his motion, the Court finds that Dimora cannot satisfy the burden of demonstrating by clear and convincing evidence that he is not a flight risk.[3] Therefore, Defendant Dimora's motion for release pending sentencing and his second trial is DENIED.

**IT IS SO ORDERED**.

Dated: April 23, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3]Based upon the record, the Court also has concerns regarding whether Dimora would pose a risk to others were he released. However, because the issue was not raised by the parties, and consideration of the flight risk resolves the issue of bond, the Court makes no findings as to this prong of the test under § 3143.