# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) **JUDGE SARA LIOI** |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **CASE NO. 1:10-CR-387-1** |
| | ) **(CASE NO. 1:17-CV-1288)** |
| **JAMES DIMORA,** | ) |
| | ) |
| **Defendant.** | ) |

## JAMES DIMORA'S SENTENCING MEMORANDUM

In 2012, Mr. Dimora was convicted of numerous bribery-related offenses. On August 1, 2012, the Court sentenced him to a within-guideline sentence of 336 months, to be followed by three years of supervised release. On March 14, 2022, the Court vacated two of Mr. Dimora's convictions (Counts 12 and 13) and scheduled a resentencing. We submit this memorandum to address the new sentencing issues.

I. **MR. DIMORA'S GUIDELINE RANGE HAS CHANGED.**

Mr. Dimora's initial sentencing hearing occurred on July 30 and 31, 2012. Following extensive briefing and argument, the Court made factual findings and imposed a sentence within the applicable sentencing guideline range.

The Court's guideline calculation was as follows:

- § 2C1.1 Base Offense Level:           14
- § 2C1.1(b)(2) Loss Amount via § 2B1.1:  + 14
- § 2C1.1(b)(1) Multiple Bribes:         + 2
- § 2C1.1(b)(3) Public Official:         + 4
- § 3B1.1(a) Role in Offense:            + 4
- § 3C1.1 Obstruction:                   + 2
- Adjusted Offense Level:                40

(7/31/12 Tr. at 273-74.)

In determining Mr. Dimora's guideline sentence, the Court found that the loss amount was $451,801.52. (*Id.* at 241-242.) This resulted in a 14-level increase in Mr. Dimora's offense level. The resulting total offense level was 40, which is a range of 292-365 months imprisonment, and the Court imposed a within-guideline sentence of 336 months.

1

As a result of the vacating of Mr. Dimora's convictions on Counts 12 and 13, the loss amount is reduced. The Court determined that the loss amount from Counts 12 and 13 was $34,237.04. (*Id.* at 241.) Since those convictions have been vacated, the loss amount is thereby reduced to $417,564.48.

In resentencing Mr. Dimora, the Court is to apply the guidelines "in effect on the date the defendant is sentenced." *Dorsey v. United States*, 567 U.S. 260, 271 (2012) (quoting 18 U.S.C. § 3553(a)(4)(A)(ii)). Based on the Court's prior findings and the current sentencing guidelines, Mr. Dimora's total offense level is now 38, a range of 235-293 months imprisonment:

- § 2C1.1 Base Offense Level:             14
- § 2C1.1(b)(2) Loss Amount via § 2B1.1:  + 12
- § 2C1.1(b)(1) Multiple Bribes:          + 2
- § 2C1.1(b)(3) Public Official:          + 4
- § 3B1.1(a) Role in Offense:             + 4
- § 3C1.1 Obstruction:                    + 2
- Adjusted Offense Level:                 38

## II. GROUNDS EXIST TO DEPART DOWNWARD IN DETERMINING MR. DIMORA'S GUIDELINE SENTENCE.

In resentencing Mr. Dimora, the Court is to consider him as he now stands before the Court. *See Pepper v. United States*, 562 U.S. 476, 492 (2011) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." (citations omitted)).

On June 21, 2022, Mr. Dimora will be 67 years old. During his ten years of incarceration, his health has deteriorated. These are grounds for the Court to depart downward in now determining Mr. Dimora's guideline sentence.

**A. Mr. Dimora's age is a basis to depart downward.**

The sentencing guidelines state that advanced age is a reason to depart downward where "present to an unusual degree." *See* U.S.S.G. § 5H1.1.

Mr. Dimora is now aged "to an unusual degree." Only 3.4% of offenders are more than sixty years old at their sentencing. U.S. Sentencing Commission, *2021 Sourcebook* at 50 (2022).[1] His age is a basis to depart downward.

The Sixth Circuit has held that "[b]oth the Guidelines and our Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing." *United States v. Payton*, 754 F.3d 375, 379 (6th Cir. 2014). In so holding, the Sixth Circuit explained that "observers of the criminal justice system have long acknowledged the 'key' argument that elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have little to no utilitarian benefit." *Id.* (citations omitted).

The Sentencing Commission has conducted extensive research on recidivism, which the Commission notes "is central to three of the primary purposes of punishment in [18 U.S.C. § 3553(a)]—specific deterrence, incapacitation, and rehabilitation." U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* at 2 (2017).[2] The Commission concluded that "[o]lder offenders were substantially less likely than younger offenders to recidivate following release." *Id.* at 3. Offenders in the 65-plus category have the lowest recidivism rate of anyone. *Id.* at 3, 23. These oldest offenders who were convicted of economic crimes, like Mr. Dimora, have the lowest rearrest rate of any category of crime. *Id.* at 25.

---

[1] Available online here: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/2021_Annual_Report_and_Sourcebook.pdf
[2] Available online here: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf

**B. Mr. Dimora's health is a basis to depart downward.**

The sentencing guidelines also state that poor health is a reason to depart downward where "present to an unusual degree." *See* U.S.S.G. § 5H1.4.

During his ten years of imprisonment, Mr. Dimora's health has deteriorated and is poor to an unusual degree among offenders. He has a heart defect (atrial fibrillation), an intestinal disorder (diverticulitis), an inner-ear equilibrium problem (Meniere's disease), and a knee which requires replacement. He suffered a stroke, is diabetic, and is in a wheelchair. The Bureau of Prisons has transferred him to the Federal Medical Center, Devens, a facility in Massachusetts for inmates with advanced medical needs.[3]

Based on his age and health, Mr. Dimora is also a high-risk individual for Covid.[4] The incarcerated have fared particularly poorly during the Covid pandemic. *See, e.g.*, Meg Anderson and Huo Jingnan, NPR, *As Covid Spread in Federal Prisons, Many At-Risk Inmates Tried and Failed to Get Out* (Mar. 7, 2022) (reporting that "[i]n 2020, the death rate in prisons run by the BOP was 50% higher than the five years before the pandemic" and that "[o]f those who died from COVID-19, nearly all were elderly or had a medical condition that put them at a higher risk of dying from the virus"). Mr. Dimora has contracted Covid twice, once became very ill, but has survived.

Where an offender is both aged and in poor health, a downward departure under the guidelines is particularly appropriate. *See, e.g.*, *United States v. Johnson*, 71 F.3d 539, 545 (6th Cir. 1995) ("[A]n aged defendant with a multitude of health problems may qualify for a downward departure under § 5H1.4."). In these circumstances, the guidelines state that a downward departure resulting in home confinement may even be warranted. *See* U.S.S.G. § 5H1.1 ("Age may be a

---

[3] We can submit medical records at the Court's request.
[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

4

reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."); *id.* § 5H1.4 ("An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.").

### III. A BELOW GUIDELINE SENTENCE IS APPROPRIATE UNDER SECTION 3553.

In resentencing Mr. Dimora, the Court is to impose a sentence that is sufficient but "no greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a). In determining what sentence is sufficient, the Court is to consider the seven § 3553(a) factors.

One of those factors is "the need to avoid unwanted disparities among defendants with similar records who have been found guilty of similar misconduct." *Id.* § 3553(a)(6). As the Sixth Circuit has stated: "Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007).

Since Mr. Dimora's original sentence, the Sentencing Commission has made additional tools available to assist courts in avoiding sentencing disparity. In 2020, the Commission released the Interactive Data Analyzer, which allows for advanced data filtering and quick visualization of large datasets.[5] In 2021, the Commission released the Judicial Sentencing Information platform, which tracks the sentences courts have imposed under specific guidelines, offense levels, and criminal histories. The Commission describes the Judicial Sentencing Information platform as

---

[5] Available online here:
https://ida.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboards

5

being "specifically developed with the needs of judges in mind. The platform provides quick and easy online access to sentencing data for similarly-situated defendants."[6]

The Sixth Circuit has encouraged courts to rely on this Commission sentencing data to avoid sentencing disparity under § 3553(a)(6). As the Court explained, "sentencing data released by the Sentencing Commission should serve as a starting point for district judges to avoid unwarranted sentence disparities." *United States v. Perez-Rodriguez*, 960 F.3d 748, 756-757 (6th Cir. 2020) (citations omitted) (reversing upward variance sentence); *see also United States v. Lightning*, 835 F. App'x 38, 43 (6th Cir. 2020) (relying on Commission statistics in vacating excessive sentence).

The Sixth Circuit also has said that "[n]ational uniformity may be particularly important when a particular crime statutorily allows for a severe punishment but it has not been imposed in similar cases." *Simmons*, 501 F.3d at 626. The data shows that is the case here.

Twelve of the levels of Mr. Dimora's guideline sentence are from § 2C1.1(b)(2)'s incorporation of the loss table in § 2B1.1. The loss table's impact can be severe, given the exponential curve of the sentencing table at the higher levels. But unlike other guideline provisions, it is not based on empirical data. This has led to sustained criticism. *See, e.g.*, Barry Boss and Kara Kapp, *How the Economic Loss Guideline Lost its Way, and How to Save It*, 18 OHIO ST. J. CRIM. L. 605, 619 (2021) ("[T]he sentences recommended by the loss table are widely viewed as unduly severe, increasingly arbitrary, and manifestly disproportionate to the non-violent nature of the underlying economic crimes.").

The Sixth Circuit has agreed with these criticisms and held that "because the loss Guidelines were not developed using an empirical approach based on data about past sentencing

---

[6] Available online here: https://www.ussc.gov/guidelines/judiciary-sentencing-information

6

practices, it is particularly appropriate for variances." *United States v. Musgrave*, 647 F. App'x 529, 538 (6th Cir. 2016) (citing Mark H. Allenbaugh, *"Drawn from Nowhere": A Review of the U.S. Sentencing Commission's White-Collar Sentencing Guidelines and Loss Data*, 26 FED. SENT'G REP. 19, 19 (2013)).  Commission sentencing data shows that variance from the guidelines when sentencing under the loss table has become the norm.  *See, e.g.*, Mark H. Allenbaugh, *Sentencing in Chaos: How Statistics Can Harmonize the 'Discordant Symphony*,'" 32 FED. SENT'G REP. 128, 130-32 (2020) (showing that, post-*Booker*, the majority of § 2B1.1 sentences are below guideline).  The data tools recently released by the Sentencing Commission confirm this and show that courts vary from the loss guidelines most often at higher offense levels, often substantially.

When examining sentencing data for specific guideline offense levels using the Commission's Judicial Sentencing Information platform, the variances from the guideline range are most dramatic at higher offense levels.  *Table 1,* using JSIN data and excluding § 5K1.1 substantial-assistance sentences, shows the median and average sentences for higher offense levels under guideline § 2C1.1 for Category I offenders.  The table shows that the sentences courts impose are substantially below the low end of the guideline range.

*Table 1: JSIN – Section 2C1.1 Sentences Versus Guidelines*

| Level | Guideline Range | Median Sentence | Average Sentence |
|---|---|---|---|
| 36 | 188-235 | 109 | 118 |
| 37 | 210-262 | 72 | 71 |
| 38 | 235-293 | N/A | NA |

JSIN's data does not include enough level-38 sentences to give medians and averages, but they can be calculated by performing a statistical analysis of the Commission's underlying datafiles from which JSIN draws its data.  This analysis—sentencing outcomes of criminal history Category I offenders under § 2C1.1 at level 38, Mr. Dimora's guideline sentence without a

7

downward departure—was recently assembled and submitted to the Sixth Circuit. That data shows the following:

<u>United States v. Alqsous</u> – Data for § 2C1.1 Category I, Level 38 Offenders, 2006-2018, No 5K[7]

- Median Sentence: 120 months
- Average Sentence: 119.5 months
- 75th Percentile of Sentences: 144 months
- Percent of Offenders Receiving Downward Variance: 93%
- Average downward variance from bottom of guideline range: 54.4%
- Median downward variance from bottom of guideline range: 48.9%

The data shows that 93% of offenders similarly situated to Mr. Dimora have received downward variances from the guideline sentence, that more than three quarters of similarly situated offenders have received sentences of 12 years or less, and that a sentence above 168 months is a statistical anomaly.

Because § 2C1.1 incorporates the § 2B1.1 loss table, it is also helpful to examine the larger dataset of offenders with comparable offense levels sentenced under § 2B1.1, again excluding § 5K1.1 sentences. Those results are reported below in *Table 2*. They too are striking. The table below includes offense levels up to 43—five levels above Mr. Dimora's offense level of 38—to demonstrate the substantial disparity between the loss-table-based guideline sentences and the sentences that offenders actually received. Even at offense level 43, with a guideline sentence of life, the median sentence imposed was 15 years. At offense level 38, the median sentence is just over 13 years, and the average is 12 years (146 months).

---

[7] Appellant's Brief at 78-81, *United States v. Alqsous*, No. 19-3573, ECF #42 (5/14/20).

*Table 2: JSIN – Section 2B1.1 Sentences Versus Guidelines*

| Level | Guideline Range | Median Sentence | Average Sentence |
|---|---|---|---|
| 36 | 188-235 | 120 | 121 |
| 37 | 210-262 | 128 | 146 |
| 38 | 235-293 | 158 | 146 |
| 39 | 262-327 | 136 | 158 |
| 40 | 292-365 | 120 | 123 |
| 41 | 324-405 | 168 | 183 |
| 42 | 360-life | 168 | 200 |
| 43 | Life | 180 | 226 |

The data shows that there is a large disparity between Mr. Dimora's guideline range and the sentences actually imposed on others similarly situated, or even those situated substantially worse. The data also shows that courts vary below the guideline sentence, often substantially, 93% of the time in cases involving similarly situated offenders.

Mr. Dimora's guideline offense level is 38, without a downward departure. A guideline sentence at the bottom of the guideline range is 235 months. But that sentence would be 95.8% higher than then median sentences actually imposed on similarly situated level-38 offenders, based on the data summarized above.[8] A 235-month sentence would even exceed the median and average sentences for an offender at level 43, where the guideline range is life.

Imposing a sentence that avoids such disparities is the reason for the § 3553(a)(6) requirement. *See, e.g.*, *United States v. Stanton*, 850 F. App'x. 953, 955 (6th Cir. 2021) (explaining that "the need to avoid unwarranted sentencing disparities (§ 3553(a)(6)) lies at the core of Congress's statutory sentencing scheme" and vacating sentence with upward variance (citations omitted)). Varying below Mr. Dimora's guideline sentence would be consistent with sentences given to similarly situated offenders and approved by our Court of Appeals. *See United States v. Hills*, 27 F.4th 1155, 2022 U.S. App. LEXIS 5669, at *80 (6th Cir. Mar. 3, 2022) (affirming 151-

---

[8] The median sentence from the *Alqsous* dataset was 120 months. A low-end guideline sentence at level 38 would be 235 months, which is 115 months higher than the median.

9

month sentence for Category I, Level 38 offender under § 2C1.1, and describing *Alqsous* dataset described above). It would result in a sentence that is sufficient but "no greater than necessary" to satisfy the §3553 factors.

**IV. CONCLUSION.**

On resentencing, Mr. Dimora's offense level under the sentencing guidelines is now 38, an imprisonment range of 235-293 months. However, good grounds exist under the guidelines to depart downward based on his age and health. In addition, good grounds exist to vary below the sentencing guidelines to avoid unwanted sentencing disparities, evidenced by the sentencing data and tools recently released by the Sentencing Commission to assist courts in sentencing.

DATED: April 29, 2022
/s/ *Philip S. Kushner*
Philip S. Kushner (0043858)
Michael Hamed (0069092)
Brandon Mordue (0092146)
KUSHNER & HAMED CO., LPA
1375 East Ninth Street, Suite 1930
Cleveland, Ohio 44114
Phone: (216) 696-6700
Fax:    (216) 696-6772
pkushner@kushnerhamed.com
mhamed@kushnerhamed.com
bmordue@kushnerhamed.com

*Counsel for Defendant James Dimora*

## CERTIFICATE OF SERVICE

A copy of the foregoing *James Dimora's Sentencing Memorandum* was served on opposing counsel this 29th day of April, 2022, by means of the Court's electronic filing system.

                                                 /s/ Philip S. Kushner

                                                 *Counsel for Defendant James Dimora*